

## USFC2010-1544-03

{C3566B84-B612-436B-9277-11265D4D04CD}
{118699}{54-110509:113551}{042911}

# REPLY BRIEF

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

ULTRAMERCIAL, LLC and ULTRAMERCIAL, INC.,

*Plaintiffs-Appellants,*

v.

HULU, LLC,

*Defendant,*

and

WILDTANGENT, INC.,

*Defendant-Appellee.*

*Appeal from the United States District Court for the Central District of California in Case No. 09-CV-6918 · Judge R. Gary Klausner.*

## REPLY BRIEF OF APPELLANTS

LAWRENCE M. HADLEY
HAZIM ANSARI
MIEKE K. MALMBERG
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
(213) 694-1200 Telephone
(213) 694-1234 Facsimile

*Attorneys for Plaintiffs-Appellants,*
*Ultramercial, LLC and Ultramercial, Inc.*

Dated: April 29, 2011

 

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants, Ultramercial, LLC and Ultramercial, Inc. certifies the following:

1.    The full name of every party represented by me is:

   Ultramercial, LLC and Ultramercial, Inc.

2.    The name of the real party in interest represented by me is:

   Ultramercial, LLC and Ultramercial, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   There are no parent corporations or any publicly held

   companies that own 10 percent or more of the stock of

   the parties represented by me.

4.    The names of all law firms and the principals or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:

> Lawrence M. Hadley
> Hazim Ansari
> Mieke K. Malmberg
> Hennigan, Bennett & Dorman LLP
> 865 South Figueroa Street, Suite 2900
> Los Angeles, California 90017
> Telephone: (213) 694-1200
> Facsimile: (213) 694-1234

DATED: April 29, 2011            Respectfully submitted,

_____
Mieke K. Malmberg

HENNIGAN DORMAN, LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200

Attorneys for Plaintiffs-Appellants
ULTRAMERCIAL, LLC and
ULTRAMERCIAL, INC.

# TABLE OF CONTENTS

**(Page)**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION.......................................................................................1

ARGUMENT ..............................................................................................4

I.   THE '545 PATENT REQUIRES IMPLEMENTATION
     THROUGH A SPECIALLY PROGRAMMED COMPUTER ...............4

     A.   Claims Reciting the Use Of A General Purpose
          Computer "Programmed To Perform Particular
          Functions Pursuant To Instructions From Program
          Software" Are Patent-Eligible ............................................5

     B.   Method Steps Of The '545 Patent, Read In Light Of The
          Specification, Must Be Performed On A Specially
          Programmed Computer...........................................................6

          1.   The Claims And The Specification Require
               Computer-Based Implementation....................................7

          2.   The Claim Limitations Cannot Be Performed On
               A General Computer........................................................11

     C.   No Authority Holds That The Computer-Implemented
          Method Must Disclose The Particular Programming
          Code To Satisfy The Particular Machine Test...............12

II.  THE CLAIMS OF THE '545 PATENT ARE NOT
     ABSTRACT ...........................................................................15

     A.   Ultramercial Applied The Correct Legal Standard.......................15

     B.   The Claims Of The '545 Patent Are Not Abstract
          Because A Computer Is Necessary To Practice the
          Claimed Invention...............................................................17

     C.   Practicing The Claims Through An Internet Website Is
          Necessary And Is Not Extra-Solution Activity .............................18

# TABLE OF CONTENTS (continued)

<u>(Page)</u>

    D.    The '545 Patent Is Not Like *Benson* Or *Flook* Because The Claimed Method Does Not Recite A Mathematical Equation ..................................................................................20

    E.    The '545 Patent Is Not Like *Bilski* Because The Claimed Method Cannot Be Expressed Or Written As A Mathematical Equation.......................................................21

    F.    The '545 Patent Recites Patent Eligible Subject Matter For The Same Reasons Expressed In *Research Corporation* And *Diehr* ..............................................22

III.    THE DISTRICT COURT ERRED BY INVALIDATING ULTRAMERCIAL'S PATENT WITHOUT CONSTRUING ANY CLAIM TERMS ..........................................................24

CONCLUSION ..................................................................................26

DECLARATION OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**(Page)**

## CASES

*AT&T Corp. v. Excel Communs., Inc.*,
   172 F.3d 1352 (Fed. Cir. 1999) ................................................. 21

*Bilski v. Kappos*,
   130 S. Ct. 3218 (2010).......................................................*passim*

*CLS Bank Int'l v. Alice Corp. Pty., Ltd.*,
   2011 U.S. Dist. LEXIS 23669 at *84 (D.D.C. Mar. 9, 2011) ......................... 6

*CyberSource v. Retail Decisions, Inc.*,
   620 F. Supp. 2d 1068 (N.D. Cal. 2009)...................................... 13, 14, 24, 25

*DealerTrack, Inc. v. Huber*,
   657 F. Supp. 2d 1152 (C.D. Cal. 2009) ........................................ 14

*Diamond v. Diehr*,
   450 U.S. 175 (1981).........................................................*passim*

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) .......................................... 24, 25

*Ex Parte Halligan*,
   89 U.S.P.Q. 2d 1355 (B.P.A.I. 2008) ...................................... 12, 13

*Gottschalk v. Benson*,
   409 U.S. 63 (1972)......................................................... 17, 20

*Hutchins v. Zoll Med. Corp.*,
   492 F.3d 1377 (Fed. Cir. 2007) .............................................. 11

*In re Alappat*,
   33 F.3d 1526 (Fed. Cir. 1994) ............................................. 4, 5, 6

*In re Katz Interactive Call Processing Patent Litigation*,
   2011 U.S. App. LEXIS 3212 at *23 (Fed. Cir. Feb. 18, 2011) ...................... 6

*Parker v. Flook*,
   437 U.S. 584 (1978)..................................................... 18, 19, 20

## TABLE OF AUTHORITIES (continued)

(Page)

*Prometheus Labs., Inc. v. Mayo Collaborative Servs.*,
    628 F.3d 1347 (Fed. Cir. 2010) ........................................................ 7, 19, 20

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
    627 F.3d 859 (Fed. Cir. 2010) ................................................ 1, 15, 22, 23, 24

*SiRF Tech., Inc. v. ITC*,
    601 F.3d 1319 (Fed. Cir. 2010) .................................................................... 18

*State Street Bank & Trust Co. v. Signature Financial Group, Inc.*,
    149 F.3d 1368 (Fed. Cir. 1998) ................................................. 5, 6, 15, 16, 21

**STATUTES**

35 U.S.C. § 101 ...................................................................................... 1, 4, 7, 12, 16

35 U.S.C. § 112 ...................................................................................................... 12

35 U.S.C. § 112(6) ................................................................................................. 13

# INTRODUCTION

Appellee WildTangent, Inc.'s ("WildTangent")[1] arguments for affirming the invalidation of Ultramercial's '545 patent all rest on either misstatements of the legal standard for patent-eligible subject matter, or mischaracterizations of Ultramercial's patent under the correct legal standard. Under the legal standard most recently set forth by this Court, a method claim satisfies the patent-eligibility requirement of 35 U.S.C. § 101 if it recites a functional and palpable process. *See Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868-69 (Fed. Cir. 2010). Tellingly, WildTangent never addresses this legal standard until the last few pages of its brief. Even then, WildTangent offers no coherent argument as to how the claims of the '545 patent fail the functional and palpable test. Rather, WildTangent simply asserts that the claim language, which the District Court never construed, lacks implementation details that no court has ever required.

In the same way, WildTangent misapplies the "machine or transformation test" to Ultramercial's patent. The legal test is undisputed. A claim is patent eligible if even a single limitation is tied to a "particular machine" or a "specific machine or apparatus." A computer programmed to perform a particular function

---

[1] Originally this appeal named an additional party, Hulu, LLC, as an appellee. Ultramercial and Hulu have entered into a confidential settlement agreement and Hulu has been stricken from the caption.

is a "particular machine." WildTangent makes the unsupported and false assertion that a "general purpose" computer, out of the box, can perform the patented steps. Contrary to WildTangent's assertion, each claim requires that a "facilitator" make media content, protected by intellectual property rights, available to consumers over a computer network, associate the media content with an advertisement, and allow computer access to the media content only after the consumer has viewed the advertisement and engaged in any required interaction. General purpose computers, with only preinstalled software, cannot prevent a consumer from accessing online content made available at a website unless the consumer first views completely an associated advertisement and engages in any required interaction. In invalidating the Ultramercial patent, the District Court overlooked this aspect of each claim altogether.

WildTangent further suggests that a method claim cannot sufficiently tie to a computer programmed to perform a particular function unless the claim discloses the exact sequence of code or algorithms required to practice the method. Yet WildTangent cites no authority for its position, and none exists. So long as the claimed method can only be performed by a programmed computer, and cannot be performed by the human mind alone, it is patent eligible and need not recite programming code or algorithms. Indeed, WildTangent's position, if accepted,

would turn every patent application for a computer-based method into volumes of software code.

WildTangent also asserts that the claims of the '545 patent are more akin to the ineligible claims addressed in *Benson*, *Flook*, and *Bilski*, as opposed to the eligible claims addressed in *Diehr* and *Research Corporation*. But the claims in the '545 patent share nothing in common with the mathematical equations rejected in *Benson* and *Flook*. Likewise, the claims in the '545 patent are dissimilar in both content and style to the methods for hedging risk recited in *Bilski*, which not only lacked any requirement for a computer, but could have been recited just as easily as a mathematical equation. In contrast, the claims of the '545 patent recite steps that can only be practiced through a particular apparatus, just as the claims in *Diehr* and *Research Corporation*.

Finally, the Supreme Court's *Bilski* decision expressly rejected any notion that the claims in the '545 patent are ineligible for patent protection because they recite a method for conducting an Internet-based business. Thus, the District Court's decision invalidating every claim of the '545 patent as patent-ineligible should be reversed.

# ARGUMENT

## I.    THE '545 PATENT REQUIRES IMPLEMENTATION THROUGH A SPECIALLY PROGRAMMED COMPUTER

The parties agree that patent claims satisfy 35 U.S.C. § 101 if tied to a "particular machine."  While a "clue" to patentability, the parties also agree that the absence of a tie to a particular machine is not the end to the patent eligibility determination:  Method patents, including business method patents, still satisfy the broad eligibility standard contained in the Patent Act unless the claims recite "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 130 S. Ct. 3218, 3225-26, 3228 (2010).

Each claim of Ultramercial's patent is tied to a particular machine.  Under *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994), method claims reciting the use of a general purpose computer "programmed to perform particular functions pursuant to instructions from program software" are patent-eligible.  In the '545 patent, certain limitations in each claim recite that a facilitator's website makes media content available online to consumers for free, but blocks access until the consumer completely views a sponsored message associated with the content, and engages in any required interaction with the sponsored message.  [Blue Brief at 8-9, 14-15; A481-A482.]  Performing this step plainly requires a computer at the facilitator's website programmed to perform the recited functions.  Nothing more is required for patent-eligibility.

WildTangent's arguments to the contrary misapply the "particular machine" test and are factually unsupported. WildTangent relies on Board of Patent Appeals and Interferences ("BPAI") cases, and district court decisions currently on appeal. Although this Court has not defined the precise contours of the machine test, *Alappat* remains valid law and certainly provides more persuasive authority than BPAI cases and appealed district court decisions. WildTangent's assertions that a "general purpose" computer could perform each limitation of the '545 claims is unsupported and incorrect. And WildTangent provides no legal support for its suggestion that a "particular machine," in the context of computers, requires disclosure of the "software" program necessary to perform the recited functions.

A.    **Claims Reciting the Use Of A General Purpose Computer "Programmed To Perform Particular Functions Pursuant To Instructions From Program Software" Are Patent-Eligible**

This Court has held that a computer programmed with certain software instructions is, by definition, a particular machine. *In re Alappat*, 33 F.3d at 1545 (holding that a general purpose computer becomes a special purpose computer once it is programmed to perform particular functions). WildTangent argues that *Alappat* is no longer good law because the decision rests on the "useful, concrete and tangible result" test set forth in *State Street Bank & Trust Co. v. Signature*

*Financial Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998).[2]  According to

WildTangent, the Supreme Court overruled *State Street* in its 2010 *Bilski* decision.[3]

[Red Brief at 1, 20.]  Yet *Alappat* remains persuasive authority and has never been

overruled for the cited proposition.  To the contrary, district courts and this Court

have both, within the past two months, cited *Alappat* for the proposition that a

computer that has been specifically programmed to perform the steps of a method

is no longer considered a general purpose computer, but a particular machine.  *See*

*In re Katz Interactive Call Processing Patent Litigation*, 2011 U.S. App. LEXIS

3212 at *23 (Fed. Cir. Feb. 18, 2011); *CLS Bank Int'l v. Alice Corp. Pty., Ltd.*,

2011 U.S. Dist. LEXIS 23669 at *84 (D.D.C. Mar. 9, 2011).

### B.    Method Steps Of The '545 Patent, Read In Light Of The Specification, Must Be Performed On A Specially Programmed Computer

WildTangent asserts that neither the claims nor the specification of the '545

patent sufficiently tie the invention to a "particular machine" to pass the "particular

machine" test.  WildTangent is wrong.  When read in light of the specification,

---

[2] WildTangent also asserts that Ultramercial improperly relies on the *State Street* "concrete and tangible result test."  [Red Brief at 12.]  Even though *State Street* has not been expressly overruled, Ultramercial does not rely on it.  Instead, Ultramercial relies on *Alappat* and the authorities cited in its opening brief for the "machine" test, and on *Research Corporation* for the "abstract" idea test.

[3] While the Supreme Court certainly questioned the applicability of the *State Street* test, it did not expressly overrule it, even though it had an opportunity to do so. *See Bilski*, 130 S. Ct. at 3218, 3231.

each claim contains limitations that, when properly construed, can only be implemented through a specially programmed computer.

### 1.    The Claims And The Specification Require Computer-Based Implementation

WildTangent asserts that "the majority" of steps recited in the Ultramercial patent can be performed without any computers, but rather can be performed by "human beings" alone. [Red Brief at 23-24.] Even if true, WildTangent's argument is legally irrelevant. This Court recently confirmed that a single limitation is sufficient to satisfy the "machine or transformation test." *Prometheus Labs., Inc. v. Mayo Collaborative Servs.*, 628 F.3d 1347, 1355-57 (Fed. Cir. 2010) (at least one step requiring a transformation rendered the entire claim patentable under the transformation prong of the test); *see also Diamond v. Diehr*, 450 U.S. 175, 181, 186 (1981) (only some steps of the patentable method used a programmed computer). In the '545 patent, limitations require that a media product be made available online to consumers at a facilitator's website free of charge, with access restricted until the consumer views entirely an associated sponsored message and engages in any required interaction. [Blue Brief at 8-9, 14-15; A481-A482 (*e.g.*, Claim 1, steps 5-8; Claim 8, steps 4-8).] These limitations alone suffice to bring the claims within the scope of patent-eligible subject matter under 35 U.S.C. § 101.

WildTangent incorrectly argues that interactions between the consumer and the facilitator may be performed through person-to-person interactions, without the use of a computer or any other machine. [Red Brief at 23, 24, 26-27.] While the '545 patent does not require a computer for communications between the facilitator and the content provider or the sponsor, the patent specification expressly states that the *only* way in which the facilitator-consumer interactions may take place is through a specially programmed computer—not by mail, courier, telephone or person to person meetings as WildTangent contends. [A479 (3:42-50).] Indeed, Figure 1 of the patent and the accompanying written description expressly state that while it is *preferable* for the facilitator, the content provider, the sponsor and the consumer to interact over the computer, *only* the facilitator, the content provider and the sponsor *may* use non-computer methods, including person-to-person meetings:

> All of the principals *preferably communicate* over a telecommunications network, such as the Internet, *using their respective computers,* facilitator's computer, consumer's computer, IP rights holders' computer and interposed sponsor's computer. *Three of the principals (facilitator, IP rights holder and interposed sponsor) may also communicate* through a two-way communications path, which may include telephony, facsimile, courier, mail or *even person-to-person meetings.*

[A479 (3:42-50) (emphasis added).]

WildTangent's assertion that communications between the facilitator and consumer may take place without a computer rests on overtly incorrect citations to the patent specification. First, in multiple places WildTangent cites to the language appearing at A479 (3:42-50), but omits the language stating that *only* the facilitator, IP rights holder and interposed sponsor may communicate in person-to-person meetings. [Red Brief at 23, 24, 26-27.] Second, WildTangent argues that the "display" and "access" steps of the claims could be performed "on a television." [Red Brief at 24.] In support, WildTangent cites the "background" portion of the specification. This part of the specification explains shortcomings of conventional advertising; it has nothing to do with the methods recited in the claims. [A478 (2:11-12); Red Brief at 24.]

WildTangent's arguments regarding communications between the facilitator and IP rights holder lacks relevance. In its brief, WildTangent reproduces part of Figure 4 from the specification and argues that none of the steps specify implementation on a computer. [Red Brief at 27.] But the steps reproduced in WildTangent's brief only show the procurement of the media content by the facilitator. While it is correct that these steps may be implemented with or without a computer, these steps have nothing to do with the communications between the facilitator and the consumer, which only take place through a programmed computer. [A479 (3:42-50); Blue Brief at 25-29.]

In a footnote, WildTangent points out that Ultramercial does not contend that the "Internet" is a computer programmed to perform a particular function in compliance with the "particular machine test." [Red Brief at 24 n.7.] WildTangent misses the point. The Internet is not a "machine" at all. The Internet is a communications pathway over which particularly programmed computers hosting websites can communicate with consumers. In other words, providing content and products at a website, using the Internet communications pathway, requires computers programmed in a manner to carry out any particular conditions associated with access to the content or products. For this reason, the Patent Office has granted thousands of patents that claim methods for conducting transactions on websites over the Internet.

Finally, WildTangent disputes that the Examiner's "Reasons for Allowability" confirm a tie to a specially-programmed computer. [Red Brief at 30-31.] In support, WildTangent provides a chart mapping the claim language to the Examiner's statements. [Red Brief at 30-37.] Yet both the Examiner's statements and WildTangent's chart confirm the same thing: The Examiner expressly stated that the claimed method is accomplished by distributing media products via a facilitator's website. Websites necessarily function through computers programmed in a manner that carries out the functions of the site. Thus, a website

is necessarily implemented through computers specially programmed with
instructions contained on a computer that hosts the site.

### 2.    The Claim Limitations Cannot Be Performed On A General Computer

WildTangent argues that, even if a computer is required for some steps, the
communications between the facilitator and consumer on the facilitator's website
requires nothing more that an out-of-the-box general purpose computer without
any special programming. [Red Brief at 26, 28.] But WildTangent offers no
explanation for how a general purpose computer, without any special
programming, could make copyright-protected content available at a website,
associate an advertisement with the content, and block access to the content until a
consumer views the entire advertisement. Plainly, WildTangent overlooks these
details because a general purpose computer cannot perform these tasks without
special programming. In fact, a general purpose computer consists of nothing
more than a processing unit, memory, and storage device without programming
beyond that needed to process, store, and retrieve data. *See Hutchins v. Zoll Med.
Corp.*, 492 F.3d 1377, 1381 (Fed. Cir. 2007).

WildTangent also asserts that the steps of the claimed method can be
performed by the *consumer* "using his or her generic home computer which, when
purchased, comes with a general purpose Internet browser." [Red Brief at 28.]
But the steps recited in the claims of the '545 patent are not directed to what a

-11-

consumer does. Instead, each step recites actions performed by a *facilitator*, who

necessarily must utilize a specially programmed computer at a website. [A481

("A method for distribution of products over the Internet *via a facilitator*...")].

Thus, even if a consumer could access a facilitator's website through a general

purpose computer, that fact lacks any relevance to whether the recited claims are

tied to a particular machine.

## C. No Authority Holds That The Computer-Implemented Method Must Disclose The Particular Programming Code To Satisfy The Particular Machine Test

WildTangent argues that even if the '545 patent required implementation on

a programmed computer, the claimed methods remain patent ineligible because the

patent contains no disclosure of the exact algorithms or source code used to

program the computer. [Red Brief at 26-27.] In support, WildTangent relies on

various BPAI and district court decisions. But none of these decisions provide

compelling, let alone binding, authority. Indeed, each case is inapposite. In short,

no law requires that a patent disclose how exactly a computer must be

programmed, including algorithmic sequence, to enable a computer to execute

certain steps of a claimed method. Even if the law so required, the correct validity

challenge would be under 35 U.S.C. § 112, not § 101.

WildTangent cites *Ex Parte Halligan*, 89 U.S.P.Q. 2d 1355 (B.P.A.I. 2008),

in support of its argument that a patent must disclose the exact algorithm used to

execute the claimed method. [Red Brief at 19, 23]. But *Ex Parte Halligan* is not applicable. In *Ex Parte Halligan*, the Board rejected a "means plus function" claim as indefinite where the means for performing a particular function was only a general purpose computer. The Board found that the application required disclosure of a special purpose computer programmed to perform the particular algorithm to meet the written disclosure requirements applicable only to means-plus-function claims under 35 U.S.C. § 112(6). *See id.* at 1360. Because the claims in the '545 patent are not expressed in "means-plus-function" format, they are not subject to the disclosure requirements applicable only to means-plus-function claims in section 112(6) of the Patent Act. [Blue Brief at 14-16; A481-82.]

WildTangent also cites *CyberSource v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1080 (N.D. Cal. 2009), as standing for the proposition that computer program instructions must be specified in the patent. [Red Brief at 19.] But *CyberSource* did not hold that the exact program instructions or algorithm must be specified – *CyberSource* only found that the "Internet" is not a machine – a holding that lacks any relevance to the facts of this case. As explained above, Ultramercial does not contend that the Internet satisfies the "particular machine" test in this case. Instead, the "particular machine" test is satisfied by the facilitator's computer, which must be specifically programmed to execute certain

-13-

steps of the claimed method – namely, the distribution of the media product and the sponsored message from the facilitator to the consumer through an Internet website with a mechanism to block access until the message is fully viewed. Moreover, the district court decided *CyberSource* more than a year *before* the Supreme Court's *Bilski* decision, and *CyberSource* is currently on appeal before this Court. *See CyberSource v. Retail Decisions, Inc.*, Fed. Cir. Appeal No. 2009-1358.

Finally, WildTangent cites *DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1156 (C.D. Cal. 2009). [Red Brief at 19.] But *DealerTrack* merely stands for the unremarkable rule of law that a general purpose computer cannot, without more, constitute a "particular machine." Furthermore, in *DealerTrack*, the plaintiff argued that the claim terms "terminal device" and "remote application entry and display device" were tied to a particular machine. But the district court construed those terms to include "a dumb terminal," which, by definition is a device that is used for the basic data functions of any computer and contains no programming or instructions. *See id.* at 1156. Thus, any machine used to practice the invention at issue in *DealerTrack* consisted of a "general purpose computer" and not a "particular machine" for purposes of the machine test. And just like *Cybersource*, *DealerTrack* is currently on appeal before this Court. *See DealerTrack v. Huber*, Fed. Cir. Appeal No. 2009-1566, 1588.

## II.    THE CLAIMS OF THE '545 PATENT ARE NOT ABSTRACT

Because the '545 patent claims are tied to a particular machine, they recite patent-eligible subject matter. [Blue Brief at 23-25.] But even if the claims failed to meet the machine prong of the machine-or-transformation test, which they do not, the claims are still patent-eligible because they are not abstract.

In its opening brief, Ultramercial applied the most recent decision of this Court that addresses whether claims are impermissibly abstract. Under that test, the claims of the '545 patent cannot be abstract because they recite functional and palpable processes. Further, the requirement that the claims be practiced through a programmed computer at a facilitator's website is central to the invention, not "extra-solution" activity. Moreover, the claims of the '545 patent are more like the patent-eligible claims addressed in *Diehr* and *Research Corporation*, and share nothing in common with the claims considered in *Benson*, *Flook*, and *Bilski.* Thus, the district court erred in invalidating the claims as abstract.

### A.    Ultramercial Applied The Correct Legal Standard

WildTangent argues that Ultramercial wrongly relied on the "useful, concrete, and tangible result" test articulated in *State Street*, 149 F.3d at 1373, in arguing that that the '545 patent claims are not abstract. [Red Brief at 12-13.] According to WildTangent, *Bilski* effectively overruled the "useful, concrete, and tangible result" test. [Red Brief at 12-13, 20.] But Ultramercial did not rely on the

"useful, concrete, and tangible result test." Rather, Ultramercial expressly relied on and applied the "functional and palpable" test set forth in *Research Corporation*. 627 F.3d at 868-69; [Blue Brief at 37-38.]

Even if Ultramercial had cited to *State Street*, it would not have erred. First, *State Street* has never been expressly overruled. Further, this Court in *State Street* simply explained that even though certain types of mathematical subject matter, standing on their own, represent nothing more than abstract ideas, they may be patentable—*i.e.* they are not abstract—when they are "reduced to some type of practical application, *i.e.* 'a useful, concrete and tangible result,'" provided the claims do not recite a law of nature or natural phenomenon. 149 F. 3d at 1373, 1374. Here, the exceptions to patent-eligibility for laws of nature and natural phenomenon are not at issue. Thus, the claims of the '545 patent are patent-eligible if they are not abstract. "Concrete and tangible" are simply antonyms for abstract. Nothing in *Biski* or any other case precludes consideration of whether a claim fits an antonym for "abstract" in judging patent eligibility.

Moreover, the fact that the '545 patent could be characterized as covering a "business method" has no bearing on patent eligibility under 35 U.S.C. § 101. In *Bilski*, the Supreme Court considered the possibility that business methods may be categorically outside of the scope of section 101 of the Patent Act. Nonetheless, the Supreme Court confirmed that business methods can recite patent eligible

-16-

subject matter as long as they are not abstract, and do not claim a natural phenomena or a law of nature. *See Bilski*, 130 S. Ct. at 3228.

**B.    The Claims Of The '545 Patent Are Not Abstract Because
A Computer Is Necessary To Practice the Claimed Invention**

WildTangent argues that the computer required to practice the claims recited in the '545 patent is nothing more than extra-solution activity. [Red Brief at 34.] WildTangent is wrong.  When a method may be performed by mental processes or human activity alone, without the help of a computer, the computer may be considered extra-solution activity and the claim may be rendered abstract.  *See, e.g. Gottschalk v. Benson*, 409 U.S. 63, 66-67 (1972) (finding that a computer was extra-solution activity where the claimed mathematical procedures could also be "performed without a computer.").  But the '545 patented methods cannot be performed by mental processes or human activity alone.  Without a computer, there is no other way to distribute content to consumers from a website, and block access to the content until the entire sponsored message is displayed in full. Simply put, a mental process cannot distribute media products over the Internet in exchange for watching sponsored advertising.

WildTangent further suggests that the use of a computer is unnecessary to practice the methods recited in the '545 patented because the computer functions solely to expedite the transfer of media products.  [Red Brief at 29-30.] WildTangent offers no support for its suggestion in the intrinsic patent documents.

Contrary to WildTangent's assertion, the intrinsic patent documents disclose a programmed computer as the *only* way of performing the inventions recited in the claims of '545 patent. [A479 (3:42-50); 481-82; Blue Brief at 25-30.] Thus, the claims recite patent-eligible subject matter. *See SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) (finding claims patentable where the machine plays "a significant part in permitting the claimed method to be performed" and the claimed method cannot be performed without the machine).

WildTangent's argument also assumes that method claims requiring implementation using computers to conduct tasks more efficiently would not be patent-eligible. [Red Brief at 29.] Yet the Supreme Court's *Bilski* decision confirmed the opposite. Specifically, *Bilski* expressly refused to hold that all business method patents for conducting business more efficiently are ineligible for patenting. 130 S. Ct. at 3228 ("Nor is it clear how far a prohibition on business method patents would reach, and whether it would include technologies for conducting a business more efficiently.").

### C. Practicing The Claims Through An Internet Website Is Necessary And Is Not Extra-Solution Activity

WildTangent argues that limiting the applicability of the '545 patented method to the environment of the Internet is nothing more than an attempt to circumvent patentability requirements by adding post-solution activity. [Red Brief at 36-37, 42-43.] But WildTangent's cited authority, *Parker v. Flook*, 437 U.S.

584 (1978) is misplaced. In *Flook*, the respondent claimed a mathematical formula for updating alarm limits during catalytic conversion processes. The Supreme Court found that the process was patent ineligible, not because the respondent tried to limit the claims to a particular technological environment, as WildTangent suggests [Red Brief at 36], but instead because the *only* novel feature of the claimed method was the mathematical formula. *See Flook*, 437 U.S. at 588, 594. Because mathematical formulas are, on their own, not patentable subject matter, and there was nothing else novel about the claimed invention, the Supreme Court found no patentable subject matter. *See id.* at 594.

In contrast to *Flook*, limiting the '545 patented method to the technological environment of the Internet does render the claims patent ineligible. The '545 patented method *must* be practiced through an Internet website, and the Internet website is necessary and central to the steps of the claimed invention. Thus, the Internet website required by the claims is not merely insignificant extra-solution activity as WildTangent suggests. *See Prometheus Labs.*, 628 F.3d at 1357 (finding certain steps central to the claims, and therefore not insignificant extra-solution activity).

Furthermore, the claim of the '545 patent do not preempt any field of use. Although the claims utilize an Internet website to distribute content and sponsored advertising, the claims articulate a series of specific, particular steps that must be

followed in order to practice the claimed method.   Accordingly, WildTangent's

assertion that the claims preempt all offerings of content in exchange for watching

advertising is incorrect.  [Red Brief at 35-36.]  *See Prometheus Labs.*, 628 F.3d  at

1355 (finding that the claims do not preempt all uses where the claim articulates a

series of specific steps).

### D.    The '545 Patent Is Not Like *Benson* Or *Flook* Because The Claimed Method Does Not Recite A Mathematical Equation

WildTangent argues that the '545 patented method is like the abstract ideas

considered in *Benson* and *Flook*.  [Red Brief at 33-37.]  WildTangent is wrong.

In both *Benson* and *Flook* the proposed patent claims were rejected because they

recited mathematical equations.  *See Benson*, 409 U.S. at 65 (seeking claims on a

method for converting signals from binary-coded decimal form into pure binary

form); *Flook*, 437 U.S.  at 584-85; 589-90 (holding that the only novel part of the

claim was directed to a mathematical equation, which is not patentable).  The

Supreme Court found in both cases that mathematical equations, on their own, are

abstract subject matter that cannot be patented.  *Benson*, 409 U.S. at 67-68; *Flook*,

437 U.S. at 594.  In contrast, the '545 patent does not recite methods directed to

mathematical equations.  Nor does the '545 patent express mathematical equations

in the claim language.

WildTangent wrongly analogizes the claims of the '545 patent to the

mathematical equations rejected in *Benson* and *Flook* by characterizing the

'545 patent claims as "formulas" for providing access to intellectual property in exchange for watching an advertisement on the Internet. [Red Brief at 35.] This analogy demonstrates the weakness in WildTangent's position. While a "formula" can refer to a mathematical equation – which standing alone cannot be patented – a "formula" can also refer to the list of steps to be followed in executing a procedural method or recipe – which can be patented. The claims of the '545 patent do not recite an ineligible *mathematical* equation; instead, the claims recite an eligible *procedural* method.[4]

### E.    The '545 Patent Is Not Like *Bilski* Because The Claimed Method Cannot Be Expressed Or Written As A Mathematical Equation

WildTangent argues that the '545 patent claims are similar to the claims rejected in *Bilski* as abstract. [Red Brief at 41-43.] They are not. In *Bilski*, the claims at issue recited "the basic concept of hedging [risk]" by describing a first step for a commodity trade with a buyer at one price and one risk level, and then a second step to balance the transaction risk though a commodity trade with another

---

[4] WildTangent does not argue, nor could it, that the use of algorithms renders the '545 patent claims abstract and therefore unpatentable. While algorithms are, at a basic level, equations, the use of a computer algorithm cannot, on its face render a claimed method abstract. In fact, "any step-by-step process, be it electronic, chemical, or mechanical, involves an 'algorithm' in the broad sense of the term." *AT&T Corp. v. Excel Communs., Inc.*, 172 F.3d 1352, 1356 (Fed. Cir. 1999) (*citing to State Street*, 149 F.3d at 1374-75). Furthermore, a claim that recites a practical application of an algorithm is patent-eligible. *See Diamond v. Diehr*, 450 U.S. 175, 187-88 (1981); [Blue Brief at 40-43.]

buyer at a different price and risk level. [Red Brief at 41.]; *Bilski*, 130 S. Ct. at 3223-24. In another claim, the applicant actually took this claim for hedging and expressed it as "a mathematical equation." *Bilski*, 130 S. Ct. at 3231. Furthermore, no claim required implementation through any type of machine or apparatus.

None of the claims in the '545 patent can be expressed as a mathematical equation, and WildTangent does not contend otherwise. Even Pythagoras could not take steps requiring the Internet distribution of media content and associated sponsored messages, with access to the content blocked until the message has been displayed in full, and express those steps as a mathematical equation. [*Compare* Red Brief at 32.] And unlike *Bilski*, the claims of the '545 patent can only be practiced with a specially programmed computer.

### F.     The '545 Patent Recites Patent Eligible Subject Matter For The Same Reasons Expressed In *Research Corporation* And *Diehr*

As this Court's *Research Corporation* decision recently explained, only "manifestly" abstract processes are ineligible for patenting under section 101 of the Patent Act. *See Research Corp.*, 627 F.3d at 868. Furthermore, "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Id.* at 869. Likewise, where an invention presents "functional and palpable applications in the field of computer technology," the invention is

patentable. *Id.* at 868. Applying these tests, this Court found the claims in *Research Corporation* patent eligible because the invention, addressing a need in the art, provided a precise method to accomplish the halftone rendering of gray scale images using a machine. *Id.; see also Diehr*, 450 U.S. at 164, 169 (holding that claims requiring the use of a machine to perform a method for molding raw, uncured rubber are not impermissibly abstract).

WildTangent argues that the claims recited in the '545 patent are dissimilar to the patented methods in *Research Corporation* and *Diehr* because the claims fail to disclose the method for distributing content over the Internet with specificity. According to WildTangent, the '545 patent is impermissibly abstract because it does not demonstrate or teach exactly how the *consumer* watches or accesses the media product, and asserts that the consumer could get the media products though any number of ways, including facsimile, courier, or on a DVD. [Red Brief at 40-41.]

WildTangent's arguments not only mischaracterize the teaching of the '545 patent, they miss the central feature of the methods at issue in *Research Corporation* and *Diehr* that made the claims patent eligible. First, WildTangent ignores the fact that the steps recited in the claims of the '545 patent are directed to a *facilitator*, not a consumer. [A481 (8:5-7); A482 (9:1-4).] These steps expressly require that a facilitator distribute content and sponsored messages through its

*website*. Furthermore, the specification expressly excludes distribution through

facsimile, courier, or on a DVD is expressly excluded from the claimed method.

[A479 (3:42-50).] Second, in both *Research Corporation* and *Diehr*, the claimed

methods at issue articulated patented methods containing discrete and particular

steps that could only be implemented though machines. In the same way, methods

claimed in the '545 patent claim detail discrete and particular step as to how a

facilitator must distribute media products and sponsored advertising through a

machine—specifically, a programmed computer at the facilitator's website.

## III.   THE DISTRICT COURT ERRED BY INVALIDATING ULTRAMERCIAL'S PATENT WITHOUT CONSTRUING ANY CLAIM TERMS

WildTangent asserts that the content of the '545 patent is "undisputed" and

the claim language does not expressly require a "particular machine." [Red Brief

at 21, 43.] Yet WildTangent's opposition brief alone, as well as the briefing before

the District Court, demonstrate very real disputes regarding the meaning of certain

claim terms and the extent to which programmed computers are required to

implement them. For this reason, the District Court could not pass judgment on

either the particular machine or abstract idea tests without first construing the

claim terms.

WildTangent fails to address Ultramercial's cited authority. [Blue Brief at

33-34.] Instead, WildTangent relies on *Eli Lilly & Co.* and *CyberSource* to support

its argument that no claim construction is necessary. [*Compare* Blue Brief at 33-34 to Red Brief at 45.] But *Eli Lilly* is not applicable. First, *Eli Lilly* involved a joint inventorship dispute, not a dispute over patentable subject matter. Second, although the court in *Eli Lilly* declined to construe the claim terms, its decision stemmed from the fact that the parties waived claim construction by early on agreeing to the meaning of the terms and only requesting claim construction after all of the evidence had been presented. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004). Here, this case does not involve a question of inventorship. Nor has Ultramercial waived its rights to claim construction.

The only other authority that WildTangent cites is *CyberSource.* 620 F. Supp. 2d at 1073; [Red Brief at 45.] Although the District Court in *CyberSource* declined to conduct claim construction before rendering a decision as to patentable subject matter, *CyberSource* is not binding or persuasive and is currently on appeal before this Court. *See CyberSource v. Retail Decisions*, Fed. Cir. Appeal No. 2009-1358.

## CONCLUSION

For the foregoing reasons, Ultramercial respectfully request that the District Court's judgment dismissing the First Amended Complaint be reversed.

DATED:  April 29, 2011

Respectfully submitted,

By _____
Mieke K. Malmberg

HENNIGAN DORMAN, LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200

Attorneys for Plaintiffs-Appellants
ULTRAMERCIAL, LLC and
ULTRAMERCIAL, INC.

State of California        )          Proof of Service by:
County of Los Angeles  )              US Postal Service
                       )          ✓ Federal Express

I, Stephen Moore        , declare that I am not a party to the action, am over 18 years of age and my business address is: 354 South Spring St., Suite 610, Los Angeles, California 90013.

**On** 04/29/2011  declarant served the within: Reply Brief of Appellants **upon:**

2   Copies ✓ FedEx    USPS              Copies    FedEx    USPS

Lisa K. Nguyen and Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, California 94025
     Telephone No. (650) 463-3080
     Counsel for Defendant-Appellee,
     WildTangent, Inc.

Copies    FedEx    USPS               Copies    FedEx    USPS

the address(es) designated by said attorney(s) for that purpose by depositing **the number of copies indicated above,** of same, enclosed in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of California, or properly addressed wrapper in an Federal Express Official Depository, under the exclusive custody and care of Federal Express, within the State of California

I further declare that this same day the **original and**   copies has/have been     hand delivered for filing OR the **original and** 11 copies has/have been filed by ✓ third party commercial carrier for next business day delivery to:

Office of the Clerk
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
717 Madison Place, N.W.
Washington, D.C. 20439

I declare under penalty of perjury that the foregoing is true and correct:

Signature: Stephen Moore

# CERTIFICATE OF COMPLIANCE

This Reply Brief is submitted under Federal Rule of Appellate

Procedure 32(a)(7) and complies with the type-volume limitation of that section.

I certify that using the Word Count feature of the Microsoft Word Count

processing program, this brief, including headings, footnotes and quotations (but

excluding the Table of Contents and Table of Authorities), has 5,729 words.


DATED:  April 29, 2011                Respectfully submitted,


                                      By _____
                                              Mieke K. Malmberg

                                      HENNIGAN DORMAN, LLP
                                      865 South Figueroa Street, Suite 2900
                                      Los Angeles, California 90017
                                      Telephone:  (213) 694-1200

                                      Attorneys for Plaintiffs-Appellants
                                      ULTRAMERCIAL, LLC and
                                      ULTRAMERCIAL, INC.