

Case No. 2010-1544

# UNITED STATES COURT OF APPEALS

# FOR THE FEDERAL CIRCUIT

**ULTRAMERCIAL, LLC and ULTRAMERCIAL, INC.,**

*Plaintiffs-Appellants,*

v.

**HULU, LLC,**

*Defendant-Cross Appellee,*

and

**WILDTANGENT, INC.,**

*Defendant-Appellee.*

RECEIVED

OCT 3 1 2011

United States Court of Appeals
For The Federal Circuit

Appeals from the United States District Court
for the Central District of California
in Case No. 09-cv-6918 and 06-cv-11585, Judge R. Gary Klausner

## BRIEF OF AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION, THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, AND RED HAT, INC. IN SUPPORT OF DEFENDANT/APPELLEE WILDTANGENT, INC.

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

NOV 03 2011

JAN HORBALY
CLERK

Julie P. Samuels
    (*Principal Attorney of Record*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Tel: (415) 436-9333
Fax: (415) 436-9993
julie@eff.org
*Attorneys for Amicus Curiae*
Electronic Frontier Foundation

October 28, 2011

Case No. 2010-1544

# UNITED STATES COURT OF APPEALS

# FOR THE FEDERAL CIRCUIT

## ULTRAMERCIAL, LLC and ULTRAMERCIAL, INC.,

*Plaintiffs-Appellants,*

v.

## HULU, LLC,

*Defendant-Cross Appellee,*

and

## WILDTANGENT, INC.,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Central District of California
in Case No. 09-cv-6918 and 06-cv-11585, Judge R. Gary Klausner

## BRIEF OF AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION, THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, AND RED HAT, INC. IN SUPPORT OF DEFENDANT/APPELLEE WILDTANGENT, INC.

Julie P. Samuels
    (*Principal Attorney of Record*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Tel: (415) 436-9333
Fax: (415) 436-9993
julie@eff.org
*Attorneys for Amicus Curiae*
Electronic Frontier Foundation

October 28, 2011

## CERTIFICATE OF INTEREST

## ELECTRONIC FRONTIER FOUNDATION

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for Amicus Curiae certifies that:

1.    The full name of the amicus represented by me is:

Electronic Frontier Foundation

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the amicus curiae represented by me are:

None.

4.    The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this Court is: Julie P. Samuels, Electronic Frontier Foundation, San Francisco, California.

October 28, 2011

Julie P. Samuels
*Attorneys for Amicus Curiae*
ELECTRONIC FRONTIER FOUNDATION

i

# CERTIFICATE OF INTEREST

## THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for Amicus Curiae certifies that:

1.  The full name of the amicus represented by me is:

The Computer & Communications Industry Association

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the amicus curiae represented by me are:

None.

4.  The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this Court is: None.

October 28, 2011

Matthew Schruers
*Vice President, Law and Policy, for Amicus Curiae*
The Computer & Communications Industry Association

# CERTIFICATE OF INTEREST

## RED HAT, INC.

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for Amicus Curiae certifies that:

1.    The full name of the amicus represented by me is:

Red Hat, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the amicus curiae represented by me are:

Fidelity Management & Research Company and T. Rowe Price

4.    The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this Court is: None.

October 28, 2011

Robert H. Tiller
Vice President & Assistant General Counsel, IP
*Attorneys for Amicus Curiae*
Red Hat, Inc.

# **TABLE OF CONTENTS**

STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE............1

INTRODUCTION...............................................................................................2

ARGUMENT ....................................................................................................3

    A.    Section 101 Abstractness as a Bar to Patentability Raises
        Recurring Questions of Exceptional Importance............................4

    B.    The Impermissibly Abstract Nature of the '545 Patent Causes
        Significant Harm to the Notice Function.........................................8

CONCLUSION .............................................................................................10

# TABLE OF AUTHORITIES

## Federal Cases

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
469 F.3d 1039 (Fed. Cir. 2006)..............................................................3, 7

*Bilski v. Kappos,*
130 S. Ct. 3218 (2010).....................................................................2, 4, 7, 8

*Classen Immunotherapies, Inc. v. Biogen IDEC,*
Nos. 2006-1634, 2006-1649, 2011 U.S. App. LEXIS 18126,
(Fed. Cir. Aug. 31, 2011).................................................................2, 7, 9

*Cybersource Corp. v. Retail Decisions Inc.*,
654 F.3d 1366 (Fed. Cir. 2011).............................................................2, 7

*Diamond v. Chakrabarty,*
447 U.S. 303 (1980)..................................................................................4

*Diamond v. Diehr,*
450 U.S. 175 (1981)............................................................................5, 10

*McClain v. Ortmayer,*
141 U.S. 419 (1891)..................................................................................8

*PSC Computer Prods. v. Foxconn Int'l,*
355 F.3d 1353 (Fed. Cir. 2004)................................................................8

*Research Corp. Techs. v. Microsoft Corp.,*
627 F.3d 859 (Fed. Cir. 2010)..................................................................8

*Sony Elecs, Inc. v. United States*,
382 F.3d 1337 (Fed. Cir. 2004)................................................................3

*Ultramercial, LLC v. Hulu, LLC,*
No. 2010-1544, 2011 U.S. App. LEXIS 19048,
(Fed. Cir. Sept. 15, 2011).....................................................................2, 7

**Federal Statutes**

35 U.S.C. § 101 ........................................................................................... *passim*

35 U.S.C. § 112 .................................................................................................. 9

**Federal Rule**

FED. R. APP. P. 35(a) ......................................................................................... 3

## STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE

The Electronic Frontier Foundation ("EFF") is a non-profit civil liberties organization that has worked for more than 20 years to protect consumer interests, innovation, and free expression in the digital world. EFF and its more than 14,000 dues-paying members have a strong interest in helping the courts and policy-makers in striking the appropriate balance between intellectual property and the public interest.

The Computer & Communications Industry Association ("CCIA") is a non-profit trade association dedicated to open markets, open systems, and open networks. CCIA members participate in many sectors of the computer, information technology, and telecommunications industries and range in size from small entrepreneurial firms to the largest in the industry. A list of CCIA's members is available at <http://ccianet.org/members>. CCIA members use the patent system regularly, and depend upon it to fulfill its constitutional purpose of promoting innovation. CCIA is increasingly concerned that the patent system has expanded without adequate accountability and oversight.

Red Hat, Inc. is the world's leading provider of open source software and related services to enterprise customers. Its software products are used by Wall Street investment firms, hundreds of Fortune 500 companies, and the United

States government.  Headquartered in Raleigh, North Carolina, Red Hat has

offices in 28 countries.[1]

## INTRODUCTION

The Supreme Court's decision in *Bilski v. Kappos* has been cited by

nearly 40 district and appellate courts since it was handed down just 16 months

ago.  Some of those cases, unfortunately, fail to heed Justice Stevens' warning

that in "the area of patents, it is especially important that the law remain clear

and stable."  *Bilski v. Kappos,* 130 S. Ct. 3218, 3231 (2010) (Stevens, J.,

concurring).  This Court alone, for example, issued three rulings during the

summer of 2011[2] that appear to contradict each other, and—when read

together—imply a stringent rule not contemplated by the Supreme Court in

*Bilski,* namely, that an otherwise abstract invention is patentable subject matter

when tied to the Internet or other computerized material.

The threshold question of whether an invention is impermissibly abstract

is one of great and growing importance before the courts.  Because this Court's

recent precedent appears to contradict the Supreme Court, and because the

---

[1] No party's counsel authored this brief in whole or in part.  Neither any party
nor any party's counsel contributed money that was intended to fund preparing
or submitting this brief.  No person other than amici, their members members,
or their counsel contributed money that was intended to fund preparing or
submitting this brief.
[2] *See Ultramercial, LLC v. Hulu, LLC*, No. 2010-1544, 2011 U.S. App. LEXIS
19048, (Fed. Cir. Sept. 15, 2011); *Cybersource Corp. v. Retail Decisions Inc.*,
654 F.3d 1366 (Fed. Cir. 2011); *Classen Immunotherapies, Inc. v. Biogen
IDEC*, Nos. 2006-1634, 2006-1649, 2011 U.S. App. LEXIS 18126, (Fed. Cir.
Aug. 31, 2011).

panel's decision will negatively impact potential litigants and others affected by patent rights, this Court should rehear this matter en banc.

## ARGUMENT

This Court may choose to rehear a case en banc in order to "secure and maintain uniformity of the court's decisions" or when the case "presents a question of exceptional importance." FED. R. APP. P. 35(a). "As the rule states, one (or both) of the two articulated grounds is 'ordinarily' the justification for taking a case *en banc.* These two grounds are not, however, exclusive, and [this] court will take a case *en banc* for any appropriate reason." *Sony Elecs, Inc. v. United States*, 382 F.3d 1337, 1339 n.4 (Fed. Cir. 2004). In particular, the "Federal Circuit has a special obligation to provide predictability and consistency in patent adjudication, for [its] panel decisions are of nationwide effect." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 469 F.3d 1039 (Fed. Cir. 2006) (Newman, J., dissenting from denial of pet. for reh'g en banc). This is especially true where, as here, "a lack of predictability [exists] about appellate outcomes, which may confound trial judges and discourage settlements." *Id.* at 1040 (Michel, C.J., dissenting from denial of pet. for reh'g en banc). In particular, the question of abstractness—especially as it applies to business methods tied to the Internet—is of exceptional importance in today's business and social climates and promises to be recurring.

3

A.    **Section 101 Abstractness as a Bar to Patentability Raises**

**Recurring Questions of Exceptional Importance.**

Section 101, which defines the subject matter that may be patented, serves as the primary threshold to limit the grant of exclusive rights where those rights are unnecessary and harmful. 35 U.S.C. § 101. The law provides "three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski,* 130 S. Ct. at 3225 (quoting *Diamond v. Chakrabarty,* 447 U.S. 303, 309 (1980)). The threshold question of abstractness serves as an important check on inventions that could "pre-empt use of [an abstract] approach in all fields, [] . . . effectively grant[ing] a monopoly over an abstract idea." *Id.* at 3231. In *Bilski,* the Supreme Court made clear that it is more important now than ever to ensure that this bar to patentability remains high:

> The Information Age empowers people with new capacities to perform statistical analyses and mathematical calculations with a speed and sophistication that enable the design of protocols for more efficient performance of a vast number of business tasks. If a high enough bar is not set when considering patent applications of this sort, patent examiners and courts could be flooded with claims that would put a chill on creative endeavor and dynamic change.

*Id.* at 3229.

4

Processes can be patentable subject matter, but only where those processes "detail a step-by-step method for accomplishing" the claimed invention. *Diamond v. Diehr,* 450 U.S. 175, 184 (1981). In *Diehr,* for example, the Supreme Court held that the incorporation of an equation—"not patentable in isolation"—would not render an entire patent not amenable to patenting when part of a larger, non-abstract invention. *Id.* at 188. Thus, the Court drew an important line in the sand: one cannot claim a monopoly over an abstract idea (*e.g.,* the equation), but may patent a larger process that might include the application of that idea. The *Diehr* Court further warned against circumventing the prohibition on patenting abstract ideas "by attempting to limit the use of the formula to a particular technological environment*." Id.* at 191.

The invention claimed in the '545 patent does not meet the § 101 standard set forth in *Diehr.* When taken together, the claims contain nothing more than an abstract process, at best solely tied "to a particular technological environment." The panel held that the patent was not impermissibly abstract because many of claimed steps "*are likely* to require intricate and complex computer programming" and that "certain of these steps clearly require specific application to the Internet and a cyber-market environment." Slip op. at 11 (emphasis added). But claims that are "likely" required to tie the claimed

invention to the Internet are simply not enough to find that the invention in the '545 patent—"a method for monetizing and distributing copyrighted products," essentially using advertising—not impermissibly abstract. The claims might very well be "likely" to require programming, but in actual fact they do *not* recite any programming steps. (Even if they did recite such steps, the '545 patent would still be impermissibly abstract under § 101.)

Of course, much of the business we conduct on a daily basis now takes place on the Internet. For example, 79% of our population is now online. *ICT Data and Statistics*, INT'L TELECOMM. UNION, http://www.itu.int/ITU-D/ict/statistics (follow link "Internet Users" on the right side of the web page) (last visited Oct. 25, 2011). Increasingly, the public uses the Internet for everyday activities.[3] Given this reality, merely tying an otherwise abstract business method to that environment cannot serve to make that method patentable. Likewise, a general business process of displaying ads to viewers

---

[3] *See, e.g.,* Solarina Ho, *Do You Find Yourself Going Online More and More?* , REUTERS.COM (Nov. 5, 2007), http://www.reuters.com/article/2007/11/06/us-internet-poll-idUSN0559828420071106 (indicating 79% of adults, or 178 million, go online); Cecily Hall, *Consumers Find a Friend on the Internet*, PEW INTERNET (Aug. 19, 2009), http://pewinternet.org/Media-Mentions/2009/Consumers-Find-a-Friend-in-the-Internet.aspx (stating 69% of U.S. adults log onto the web to aid decision making). Indeed, Americans rely on the web for activities ranging from dating to finance. *See* Susannah Fox, *Online Banking 2005*, PEW INTERNET (Feb. 9, 2005), http://www.pewinternet.org/Reports/2005/Online-Banking-2005.aspx (stating a quarter of adults use online banking); Sharon Jayson, *Online Daters Report Positive Connections*, PEW INTERNET (Mar. 5, 2006) http://pewinternet.org/Media-Mentions/2006/Online-daters-report-positive-connections.aspx (finding 16 million people use online dating services).

prior to the showing of copyrighted content on the Internet is no less abstract than using television or radio for the same purpose. Indeed, since using the Internet usually requires at least some amount of computer programming, any claim that recites "Internet" could satisfy the panel decision's test of "likely to require intricate and complex computer programming."

Not only is the threshold issue of abstractness as it relates to internet-based inventions one of exceptional importance, but it is recurring. The *Bilski* ruling is just over one year old, and yet we are already faced with inconsistent rulings from this Court. Brief of Defendant-Appellee at 8-9, *Ultramercial LLC v. Hulu*, No. 2010-1544 (Fed. Cir. Oct. 14, 2011) ("Def. Br."). This case, *Classen,* and *Cybersource* can be read together, but only if one comes to the conclusion that merely tying an otherwise abstract business method to the Internet or a "cyber-market environment" somehow makes that method no longer abstract.[4] *Id.* at 11. This strained reading provides potential litigants with little guidance as to the contours of impermissibly abstract subject matter under § 101, which in turn will discourage settlement. *See Amgen,* 469 F.3d at 1040 (Michel, C.J., dissenting from denial of pet. for reh'g en banc). Indeed, the instances of litigation over the question of § 101 abstractness have risen: for example, in the first year since *Bilski* came down, the Board of Patent Appeals

---

[4] If this reading is not what the panel had in mind, then that is yet another reason for rehearing en banc: to secure and maintain uniformity of the court's decisions.

and Interferences has issued 182 decisions on subject matter eligibility.[5]    The trend shows no sign of slowing down.

In *Bilski,* the "Supreme Court did not presume to provide a rigid formula or definition for abstractness." *Research Corp. Techs. v. Microsoft Corp.,* 627 F.3d 859, 868 (Fed. Cir. 2010).  By the same token, there cannot be a rigid formula for what is *not* abstract.  When taken together, this Court's recent decisions suggests otherwise.  Def. Br. 8-9.  To clarify that no such "Internet or computer" test exists, this Court should rehear this matter en banc.

**B.    The Impermissibly Abstract Nature of the '545 Patent Causes Significant Harm to the Notice Function.**

Not only does the panel decision threaten to give some kind of § 101 blessing to virtually every invention that allegedly takes place on the Internet, but it also threatens to further degrade the notice function of patents.  The notice function serves an important role in the larger patent bargain: in order to obtain a limited monopoly, a patent owner must teach the public how to practice the technology and also "apprise the public of what is still open to them." *McClain v. Ortmayer*, 141 U.S. 419, 424 (1891); *PSC Computer Prods. v. Foxconn Int'l*, 355 F.3d 1353, 1359 (Fed. Cir. 2004).

---

[5] Michelle K. Holoubek, *One Year Post-Bilski: How the Decision is Being Interpreted*, IP WATCHDOG (June 29, 2011) http://ipwatchdog.com/2011/06/29/one-year-post-bilski-how-the-decision-is-being-interpreted/id=17935/.

While important, the public notice function of software patents in particular is notoriously ineffective, even for those skilled in the relevant art. For example, as noted by the FTC, because little clarity exists in claim language typically used in software patents, many in the IT sector have admitted to "frequently" not performing clearance searches and even simply ignoring patents. FTC Report at 80 ("the notice function 'is not well served at all'").

While 35 U.S.C. § 112 requires a patent owner to set out its invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . .," the § 101 limits on patentability likewise serve as an important incentive for careful claim drafting. "If § 101 causes the drafting of careful, concrete, specific claims over abstract, conceptual claims, I see no harm. The world will have clear notice of the scope of such patent rights." *Classen,* 2011 U.S. App. LEXIS 18126 at *69, n.3 (Moore, J., dissenting).

To the extent § 101's limits on patentability lead to careful claim drafting, they have failed here. The '545 patent's claims include no detail on how to practice the invention online.[6] Rather, they simply recite that the

---

[6] The patent does include flow charts, but those charts have no mention of "intricate and complex computer programming." Rather, the flow charts merely set forth an abstract process.

9

method should take place "over the Internet" three times[7] and merely once mention the word "computer" (in a dependent claim).[8] While § 101 contains no explicit requirement regarding drafting *per se,* it does require that the patent's *claims* be considered. *See, e.g., Diehr,* 450 U.S. at 188 ("In determining the eligibility of respondents' claimed process for patent protection under section 101, their *claims* must be considered as a whole.") (emphasis added). The claims at issue here do nothing more than tie the alleged invention to the Internet the same way that businesses are conducted on the Internet everyday. They fail to put potentially infringing parties on notice of what the invention *actually is* without explaining how it differs from the mere abstract idea of exchanging advertising views for access to protected content. This failure of notice is a direct result of a set of impermissibly abstract claims.

## CONCLUSION

In light of the foregoing, Amici respectfully request that this Court rehear this matter en banc.

---

[7] "A method for distribution of products over the Internet" (cl. 1); "a third step of providing the media product for sale at an Internet website" (cl. 1); "a first step providing a product list on an Internet website" (cl. 8).
[8] "The method of claims 1 or 8, wherein the media product accessed by the consumer is downloaded to the memory of a personal computer of the consumer." (cl. 16).

October 28, 2011

Respectfully submitted,

ELECTRONIC FRONTIER FOUNDATION

By Julie P. Samuels
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Tel: (415) 436-9333
Fax: (415) 436-9993
julie@eff.org

*Attorneys for Amicus Curiae*
Electronic Frontier Foundation

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief of Amici Curiae Electronic Frontier Foundation, The Computer & Communications Industry Association, and Red Hat, Inc., was filed on this date pursuant to Fed. R. App. P. 25(a)(2)(B)(ii) by dispatch of the original and ~~thirty~~ 18 copies by Federal Express for delivery to the clerk on the next business day, addressed as follows:

Jan Horbaly
Circuit Executive and Clerk of the Court
Office of the Clerk
US Court of Appeals for the Federal Circuit
717 Madison Place, N.W., Room 401
Washington, D.C. 20439

On the same date, two true and correct bound copies of the foregoing Brief of Amicus Curiae Electronic Frontier Foundation were served on counsel for all parties on this date by Federal Express overnight delivery, addressed as follows:

Darin W. Snyder, Esq.
Luann L. Simmons, Esq.
Nora M. Puckett, Esq.
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel:   (415) 984-8700
Fax:   (415) 984-8701
*Attorneys for Defendant Hulu, LLC*

Lawrence M. Hadley, Esq.
Katherine M. Malmberg, Esq.
MCKOOL SMITH HENNIGAN, P.C.

865 S. Figueroa Street, Suite 2900
Los Angeles, CA 90017
Tel:   (213) 694-1200
Fax:   (213) 694-1234
Hazim Ansari, Esq.
HENNIGAN DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017
Tel:   (213)694-1200
Fax:   (213)694-1234
*Attorneys for Plaintiff/Appellant Ultramercial, Inc.*

Gregory C. Garre, Esq.
Richard P. Bress, Esq.
Katherine Twomey, Esq.
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Tel:   (202)637-2200
Fax:   (202)637-2201

Richard G. Frenkel, Esq.
Lisa Kim Ahn Nguyen, Esq.
LATHAM & WATKINS LLP
140 Scott Drive,
Menlo Park, CA 94025
Tel:   (650)328-4600
Fax:   (650)463-2600
*Attorneys for Defendant/Appellee WildTangent, Inc.*

I declare under penalty of perjury that the foregoing is true and correct.

October 28, 2011

Julie P. Samuels
*Attorneys for Amicus Curiae*
Electronic Frontier Foundation

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

I hereby certify as follows:

1.     The foregoing Brief of Amici Curiae Electronic Frontier
Foundation, The Computer & Communications Industry Association, and Red
Hat, Inc. complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B).  The brief is printed in proportionally spaced 14-point type, and
there are 2,038 words in the brief according to the word count of the word-
processing system used to prepare the brief (excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii), that is, the tables of contents and
citations, and certificates of counsel, and by Fed. Cir. R. 32(b), that is, the
certificate of interest, the statement of related cases, and the addendum in an
initial brief of an appellant).

2.     The brief complies with the typeface requirements of Federal Rule
of Appellate Procedure 32(a)(5), and with the type style requirements of
Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a
proportionally spaced typeface using Microsoft® Word for Mac 2011 in 14-
point Times New Roman font.

October 28, 2011

_Julie P. Samuels_
*Attorneys for Amicus Curiae*
*Electronic Frontier Foundation*