# ORIGINAL

**2010-1544**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

RECEIVED
FROM NIGHT BOX

AUG 28 2012

United States Court of Appeals
For The Federal Circuit

**ULTRAMERCIAL, LLC AND ULTRAMERCIAL, INC.,**

*Plaintiffs-Appellants,*

**v.**

**WILDTANGENT, INC.,**

*Defendant-Appellee.*

Appeal from the United States District Court for the Central District of California
No. 2:09-CV-6918

( Revised)

## PETITION OF DEFENDANT-APPELLEE
## FOR HEARING *EN BANC*



Richard G. Frenkel
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Gregory G. Garre
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Defendant-Appellee
WildTangent, Inc.*

Dated August 27, 2012

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

AUG 27 2012

JAN HORBALY
CLERK

## CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee certifies the following:

1.     The full name of every party or amicus curiae represented by me is:

   WildTangent, Inc.

2.     The name of the real party in interest (if the party named in the caption is not

   the real party in interest) represented by me is:

   N/A

3.     All party corporations and any publicly held companies that own 10 percent

   or more of the stock of the party or amicus curiae represented by me are:

   None.

4.     The names of all law firms and the partners or associates that appeared for

   the party or amicus curiae now represented by me in the trial court or agency

   or are expected to appear in this court are:

   Latham & Watkins LLP:  Gregory G. Garre, Richard G. Frenkel*, Gabriel

   K. Bell, Lisa K. Nguyen*, Katherine I. Twomey

   * Formerly with Wilson Sonsini Goodrich & Rosati PC

Dated:  August 27, 2012

Respectfully submitted,

Gregory G. Garre
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004

*Counsel for Defendant-Appellee*
*WildTangent, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF COUNSEL PURSUANT TO FED. CIR. R. 35(b) ...................1

INTRODUCTION................................................................................2

STATEMENT OF FACTS ....................................................................6

ARGUMENT .....................................................................................8

I.    *EN BANC* HEARING ON THE SCOPE OF § 101 TO COMPUTER-
      OR INTERNET-IMPLEMENTED CLAIMS IS NECESSARY ...................8

      A.    Recent Decisions Underscore That *En Banc* Review Is Needed ..........8

      B.    The Question Presented Is Exceptionally Important.......................... 13

II.   THIS CASE PROVIDES AN IDEAL VEHICLE FOR *EN BANC*
      HEARING ON THE SCOPE OF § 101 IN THIS CONTEXT ................... 14

CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Software Design Corp. v. Fiserv, Inc.,*
2012 WL 1684495 (E.D. Mo. May 15, 2012) .............................................. 14

*Association for Molecular Pathology v. United States PTO,*
653 F.3d 1329 (Fed. Cir. 2011) .........................................................................7

*Association for Molecular Pathology v. United States PTO,*
2012 WL 3518509 (Fed. Cir. Aug. 6, 2012) ...................................................7

*Association for Molecular Pathology v. Myriad Genetics, Inc.,*
132 S. Ct. 1794 (2012)........................................................................................7

*Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.),*
--- F.3d ---, 2012 WL 3037176 (Fed. Cir. July 26, 2012) ................... 1, 4, 13

*Bilski v. Kappos,*
130 S. Ct. 3218 (2010)................................................................... 1, 6, 7, 13

*CLS Bank International v. Alice Corp. Pty. Ltd.,*
685 F.3d 1341 (Fed. Cir. 2012) ............................................................ *passim*

*CyberFone Systems, LLC v. Cellco Partnership,*
--- F. Supp. 2d ----, 2012 WL 3528115 (D. Del. Aug. 16, 2012)................. 14

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011) .......................................................... 1, 3, 13

*Dealertrack, Inc. v. Huber,*
674 F.3d 1315 (Fed. Cir. 2012) .......................................................... 1, 3, 13

*Digitech Information Systems, Inc. v. BMW Financial Services NA,*
--- F. Supp. 2d ----, 2012 WL 1081084 (M.D. Fla. Mar. 30, 2012) ............. 14

*Fort Properties, Inc. v. American Master Lease LLC,*
671 F.3d 1317 (Fed. Cir. 2012) .......................................................... 1, 3, 13

**Page(s)**

*Gottschalk v. Benson,*
409 U.S. 63 (1972)......................................................................... 12

*Glory Licensing LLC v. Toys "R" Us, Inc.,*
2011 WL 1870591 (D.N.J. May 16, 2011).................................... 14

*Island Intellectual Property LLC v. Deutsche Bank AG,*
2012 WL 386282 (S.D.N.Y. Feb. 6, 2012) ................................... 14

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.,*
132 S. Ct. 1289 (2012)............................................................. *passim*

*MySpace, Inc. v. GraphOn Corp.,*
672 F.3d 1250 (Fed. Cir. 2012) ........................................... 2, 3, 5

*Nazomi Communications, Inc. v. Samsung Telecommunications, Inc.,*
2012 WL 967968 (N.D. Cal. Mar. 21, 2012) ............................... 14

*Parker v. Flook,*
437 U.S. 584 (1978)....................................................................... 12

*Prompt Medical Systems, L.P. v. Allscriptsmysis Healthcare Solutions, Inc.,*
2012 WL 678216 (E.D. Tex. Feb. 13, 2012)................................. 14

*SmartGene, Inc. v. Advanced Biological Labs., SA,*
--- F. Supp. 2d ----, 2012 WL 1059611 (D.D.C. Mar. 30, 2012) ................. 14

*Ultramercial, LLC v. Hulu, LLC,*
657 F.3d 1323 (Fed. Cir. 2011), *vacated by WildTangent, Inc. v.*
*Ultramercial, LLC,* 132 S. Ct. 2431 (2012).......................... *passim*

*Whitserve v. Computer Packages,*
2012 U.S. App. LEXIS 17510 (Fed. Cir. Aug. 7, 2012) .............. 14

*WildTangent, Inc. v. Ultramercial, LLC,*
132 S. Ct. 2431 (2012).......................................................... 2, 4, 7

**STATUTES**

35 U.S.C. § 101 ....................................................................... *passim*

**Page(s)**

35 U.S.C. § 102..................................................................... 10

35 U.S.C. § 103..................................................................... 10

## OTHER AUTHORITIES

Donald S. Chisum, *Weeds and Seeds in the Supreme Court's Business Method Patents Decision: New Directions for Regulating Patent Scope,* Lewis & Clark L. Rev. 11 (2011)........................................................... 13

Fed. Cir. R. 35(a)......................................................................8

Alison Frankel, *On The Case: Gene Patent Ruling Highlights Tension Between SCOTUS, Fed Circuit,* Thompson Reuters News & Insight (Aug. 17, 2012).......................................................................8

Eric W. Guttag, *Throwing Down the Gauntlet,* IPWatchdog, http://www.ipwatchdog.com/2011/09/16/throwing-down-the-gauntlet-rader-rules/id=19217/ (Sept. 16, 2011)...........................................3

Jonathan Masur, *Patent Inflation,* 121 Yale L.J. 470 (2011)....................................3

1 Raymond T. Nimmer, *Law of Computer Technology* (4th ed. 2012)....................3

Oral Argument, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.* (No. 2011-1486).......................................................................5

Recent Case, *CyberSource,* 125 Harv. L. Rev. 851 (2012) ........................................3

Robert Swanson, *Fort Properties Continues the Computer Aided Process Claims Debate,* JETLaw: Vand. J. Ent. & Tech. L. (Mar. 12, 2012), http://www.jetlaw.org/?p=10539 ....................................................3

## STATEMENT OF COUNSEL PURSUANT TO FED. CIR. R. 35(b)

Based on my professional judgment, I believe this appeal requires an answer to the following precedent-setting question of exceptional importance: When does a patent's reference to the use of a general purpose computer or an Internet website transform an otherwise unpatentable abstract concept into a process that satisfies the subject-matter eligibility requirement of 35 U.S.C. § 101? As explained below, this Court is internally divided on that important question.

Based on my professional judgment, I believe that a decision holding that the patent at issue is eligible for protection under § 101 would be contrary to, *inter alia*, the Supreme Court's decisions in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), and *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), as well as this Court's own decisions in *Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, --- F.3d ---, 2012 WL 3037176 (Fed. Cir. July 26, 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012); and *Fort Properties, Inc. v. American Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012).

Gregory G. Garre
*Counsel for Defendant-Appellee*
*WildTangent, Inc.*

August 27, 2012

## INTRODUCTION

This case concerns the application of 35 U.S.C. § 101 to business methods implemented on a generic computer or over the Internet. The Court held that the concededly abstract economic principle underlying the '545 patent at issue—using advertising as a form of currency—was patent eligible under § 101 because it involved an "extensive computer interface." *Ultramercial, LLC v. Hulu, LLC,* 657 F.3d 1323, 1328 (Fed. Cir. 2011), *vacated by WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431 (2012). In so holding, the Court recognized that the "broadly claimed method" in the '545 patent did not specify any computer programming. *Id.* at 1329. But the Court reasoned that the claims "likely" required "computer programming" because, in particular, the steps called for use of "an Internet website." *Id.* at 1328. In June, the Supreme Court vacated that decision and ordered this Court to reconsider this case in light of *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012). *WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431 (2012). In light of intervening decisions of this Court, WildTangent asks the Court to heed that mandate by *en banc* hearing.

Before *Mayo*, the Judges of this Court "disagree[d] vigorously" over the proper application of § 101 to computer- and Internet-implemented methods. *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1259 (Fed. Cir. 2012). Some Judges recognized that "[a] robust application of section 101 is required to ensure

that the patent laws comport with their constitutionally-defined objective," whereas others "suggest[ed] section 101 should function as a wide and 'broadly permissive' portal to patentability." *See id.* at 1269, 1268 (Mayer, J., dissenting) (quoting *Ultramercial,* 657 F.3d at 1326). That divide produced conflicting decisions— several of which adopted the former view, *see CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366 (Fed. Cir. 2011); *Dealertrack, Inc. v. Huber,* 674 F.3d 1315 (Fed. Cir. 2012); *Fort Props., Inc. v. Am. Master Lease LLC,* 671 F.3d 1317 (Fed. Cir. 2012), while another (the Court's decision in this case) trumpeted the latter view, *see Ultramercial,* 657 F.3d 1323. Numerous commentators recognized that conflict. *See, e.g.,* Recent Case, *CyberSource,* 125 Harv. L. Rev. 851, 857 (2012). And this Court itself—recognizing the discord—referred to its § 101 jurisprudence as a "swamp." *MySpace, Inc.,* 672 F.3d at 1262.[1]

The Supreme Court appeared to resolve the basis for that intra-circuit conflict this past spring: first, by stressing in *Mayo* that § 101 performs a vital "screening" function and that simply implementing an abstract concept on a

---

[1] *See also* Jonathan Masur, *Patent Inflation,* 121 Yale L.J. 470, 530 & n.256 (2011) (observing the "substantial uncertainty" and "conflict[]"); Eric W. Guttag, *Throwing Down the Gauntlet,* IPWatchdog (Sept. 16, 2011), http://www.ipwatchdog.com/2011/09/16/throwing-down-the-gauntlet-rader-rules/id=19217/ (*Ultramercial* "illustrates the wide gulf of views between the various members [of this Court] on the patent-eligibility question"); 1 Raymond T. Nimmer, *Law of Computer Technology* § 2:21 (4th ed. 2012) (contrasting *CyberSource* and *Ultramercial*); Robert Swanson, *Fort Properties Continues the Computer Aided Process Claims Debate,* JETLaw: Vand. J. Ent. & Tech. L. (Mar. 12, 2012), http://www.jetlaw.org/?p=10539 (this Court "is on a collision course").

3

computer does not make it patentable under § 101 (*Mayo*, 132 S. Ct. at 1301, 1303-04); and second, by vacating the Court's decision in *Ultramercial* and remanding for reconsideration in light of *Mayo* (*WildTangent, Inc.*, 132 S. Ct. 2431). Yet—before any supplemental briefing or argument has been ordered in this case—the same conflict has reemerged in this Court on the scope of § 101 as applied to computer-related business methods. *Compare Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.),* --- F.3d ---, 2012 WL 3037176 (Fed. Cir. July 26, 2012) (finding computer-implemented method *in*eligible under § 101 analysis comporting with *Mayo*), *with CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 685 F.3d 1341 (Fed. Cir. 2012) (finding computer-implemented method eligible under § 101 over dissent forcefully arguing that the panel had departed from *Mayo*).

If anything, the internal conflict over the application of § 101 to computer-implemented claims appears to be more pronounced than ever. In *CLS Bank,* Judge Prost observed that the majority in *CLS Bank* "failed to follow the Supreme Court's instructions [in *Mayo*]—not just in its holding, but more importantly in its approach"—and "respond[ed] to a unanimous Supreme Court decision against patentability with *even a stricter* subject matter standard." *Id.* at 44, 52 (dissent) (emphasis added). As a result, Judge Prost continued, "district courts and litigants … now face a difficult task in deciphering the law and harmonizing" *CLS Bank* with the Supreme Court's and this Court's precedent. *Id.* at 52. *Bancorp*

4

exacerbates the confusion by appearing to adopt a § 101 analysis right out of Judge Prost's dissent in *CLS Bank*. And more disagreement and confusion may be in the works. *See* Oral Argument, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.* (No. 2011-1486) (Aug. 6, 2012), *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2011-1486.mp3.

The question of the patentability of computer-implemented methods in the Internet age is exceptionally important. As Judge Mayer has observed, "[g]iven the ubiquity of computers in contemporary life, allowing a process to become patentable simply because it is computer-implemented or invokes the use of the Internet would render the subject-matter eligibility criteria contained in section 101 virtually meaningless." *MySpace, Inc.*, 672 F.3d at 1267 (dissent). And this issue is recurring in this Circuit—and in district courts across the country—with great frequency. The Court's *en banc* resolution of the issue is necessary not only to ensure conformity with Supreme Court precedent and establish uniformity within this Court's precedent, but to eliminate the confusion that now plagues district courts facing § 101 issues and creates a drag on innovation in this vital area.

This case presents an ideal vehicle for the Court to provide needed guidance on the application of § 101 in this important context given the stark manner in which the issue arises. CLS Bank is seeking rehearing *en banc* as well. The Court may benefit from hearing this case and *CLS Bank* together *en banc*.

## STATEMENT OF FACTS

The patent at issue—the '545 patent—claims exclusivity on the basic economic concept of trading advertisement viewing for access to content. A473-82. Claim 1 recites eleven steps that relate to securing the content, selecting an advertisement, and restricting access to the content based on advertisement viewing. A481. One step provides that the content is offered "for sale at an Internet website." *Id.* The district court held the claims of the '545 patent do not claim patentable subject matter under § 101. A01-07.

This Court reversed and remanded. 657 F.3d 1323. The Court characterized § 101 as only a "'coarse eligibility filter'"; explained that a process must exhibit abstractness "manifestly" to flunk § 101; and stated at the outset that the process at issue was "'not likely'" to satisfy that standard because the '545 patent "invokes computers and applications of computer technology." *Id.* at 1326-28 (citations omitted). The Court acknowledged that the concept of using advertising as currency—like the unpatentable concept of hedging in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010)—is abstract. 657 F.3d at 1328. But the Court found that the "broadly claimed method" at issue discloses a "practical application" of this idea because its steps are "*likely* to require intricate and complex computer programming." *Id.* at 1328-29 (emphasis added). The Court recognized that the patent itself did not

6

disclose any computer programming or software, but it explained that certain steps require "application to the Internet and a cyber-market environment." *Id.*

WildTangent filed a petition for certiorari asking the Supreme Court to hold the petition and consider it in light of its impending decision in *Mayo*. On March 20, 2012, the Supreme Court issued its decision in *Mayo*. The Court took a broad-based look at § 101 and its prior case law on § 101, and held that certain medical method claims failed because they did not "do significantly more than simply describe [an unpatentable concept]." 132 S. Ct. at 1297. The Court emphasized that "simply appending conventional steps, specified at a high level of generality, to ... abstract ideas cannot make those ... ideas patentable." *Id.* at 1300. Similarly, the Court observed that simply implementing an abstract idea "on a ... computer [is] not a patentable application of that principle." *Id.* at 1301.

On May 21, 2012—after supplemental briefing on the impact of *Mayo* on this case—the Supreme Court granted certiorari in this case, vacated this Court's decision, and remanded for reconsideration in light of *Mayo*. 132 S. Ct. 2431. This Court has yet to order supplemental briefing or argument on remand.[2]

---

[2] For cert stage briefing, see 2012 WL 379766; 2012 WL 1054642; 2012 WL 1550598; 2012 WL 1648364; 2012 WL 755080; 2012 WL 755081. The Supreme Court also asked this Court to reconsider *Ass'n for Molecular Pathology v. U.S. PTO*, 653 F.3d 1329 (Fed. Cir. 2011), in light of *Mayo*. *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 132 S. Ct. 1794 (2012). After supplemental briefing and argument, the Court recently issued its decision on remand. 2012 WL 3518509 (Fed. Cir. Aug. 16, 2012). That decision has engendered its own debate.

## ARGUMENT

## I. *EN BANC* HEARING ON THE SCOPE OF § 101 TO COMPUTER- OR INTERNET-IMPLEMENTED CLAIMS IS NECESSARY

Hearing *en banc* is necessary to secure and maintain uniformity of this Court's decisions on an issue of exceptional importance. *See* Fed. Cir. R. 35(a).

### A. Recent Decisions Underscore That *En Banc* Review Is Needed

Leading up to *Mayo*, this Court issued a series of decisions embodying fundamentally different views of the patent-eligibility of computer-related business methods under § 101. One view—most strikingly embodied by the decision in this case—is that § 101 is only a "'coarse eligibility filter'" that seemingly can be met by a claim involving virtually any computer interface requiring complex programming, including the programming necessary to operate an Internet website. 657 F.3d at 1326, 1328 (citation omitted). The contrary view—embodied by decisions like *Cybersource, Dealertrack,* and *Fort Properties*—is that § 101 is an important screening device that is not met simply because a method is performed over a general purpose computer or involves the use of the Internet. *See supra* at 3. The Supreme Court appeared to alleviate that conflict when it provided new and broad-based guidance on the scope and importance of § 101 in *Mayo,* then vacated the decision here and remanded for further consideration in light of *Mayo.*

---

*See, e.g.,* Alison Frankel, *On The Case: Gene Patent Ruling Highlights Tension Between SCOTUS, Fed Circuit,* Thompson Reuters News & Insight (Aug. 17, 2012). *Myriad,* however, does not resolve the growing intra-circuit conflict on the application of § 101 to computer-implemented claims.

But even before this Court has ordered supplemental briefing in this case, the conflict has reemerged with this Court's recent divided panel opinion in *CLS Bank* and ensuing decision in *Bancorp*—which again take fundamentally different approaches to the § 101 analysis for computer-implemented claims. *CLS Bank* (like the vacated decision in this case) conflicts with Supreme Court and this Court's precedent in at least three important ways:  by (1) applying a virtually insurmountable "manifest" abstractness standard for § 101; (2) failing to recognize that the addition of "well-understood, routine, conventional activity" (*Mayo*, 132 S. Ct. at 1294) is not enough to make an abstract concept patent eligible under § 101; and (3) diminishing—to the point of irrelevance—the machine-or-transformation test as a tool in assessing computer-based claims under § 101. These conflicts are underscored by the dissent in *CLS Bank* and different approach taken in *Bancorp*.

First, *CLS Bank* and the vacated decision in this case apply a virtually insurmountable standard for abstractness. They ask not whether the claims cover an abstract idea, but instead whether abstractness "exhibit[s] itself 'manifestly' 'to override the broad statutory categories of patent eligible subject matter.'" *CLS Bank*, 685 F.3d at 1349 (citation omitted); *see also id.* at 1352 & n.3; *accord Ultramercial*, 657 F.3d at 1327. Indeed, *CLS Bank* if anything went even further by stating that "[u]nless the *single most reasonable understanding* is that a claim is directed to nothing more than a fundamental truth or disembodied concept, with no

9

limitations in the claim attaching that idea to a specific application, it is inappropriate to hold that the claim is directed to a patent ineligible 'abstract idea' under 35 U.S.C. § 101." 685 F.3d at 1352 (emphasis added). That is not a test for abstractness—it is a recipe for finding that claims are *not* abstract.

That approach has no footing in the statute or Supreme Court precedent and erodes § 101 to the point of irrelevance by abrogating § 101's independent screening function in favor of the Act's other eligibility requirements (*e.g.*, §§ 102 and 103). Indeed, the *CLS Bank* majority (like the vacated decision here) went out of its way to contrast § 101 with what it called the "comprehensive provisions of 35 U.S.C. §§ 102, 103, and 112," which "do the substantive work of disqualifying those patent eligible inventions that are 'not worthy of a patent.'" *CLS Bank*, 685 F.3d at 1348 (citation omitted); *see Ultramercial*, 657 F.3d at 1326, 1329-30. Moreover, the *CLS Bank* majority "resist[ed] the Supreme Court's unanimous directive [in *Mayo*] to apply the patentable subject matter test with more vigor" and "resurrected the very approach to § 101 that … the Supreme Court laid to rest … in [*Mayo*]." 685 F.3d at 1356, 1357 (Prost, J., dissenting).

Under Supreme Court precedent including *Bilski* and *Mayo*, abstractness—not *manifest* abstractness—is sufficient to render a claim ineligible. The Court's decisions are based on a fundamentally different—and more meaningful—conception of § 101. For example, whereas decisions like the vacated one in this

10

case relegate § 101 to a "coarse eligibility filter," *Mayo* emphasizes that § 101 has a vital "screening function" independent of other provisions of the Patent Act and recognizes that the same basic view espoused by the *CLS Bank* panel (and by the vacated decision here) would render § 101 a "dead letter." *Mayo*, 132 S. Ct. at 1303-04. Likewise, this Court's other post-*Mayo* decision in *Bancorp* accepts § 101's genuine screening role and finds a computer-related business method abstract *without* applying a heightened standard. 2012 WL 3037176, at *7.

Second, the *CLS Bank* majority decision (like the vacated decision in this case) cannot be squared with *Mayo*'s holding that merely appending "routine" and "conventional" steps to an abstract concept does not satisfy § 101. *Mayo*, 132 S. Ct. at 1294. The patent in *CLS Bank* involved the abstract concept of using an intermediary in a financial transaction to mitigate risk of non-performance. Yet the majority held that the claims "appear to cover the practical application of [that] business concept in a specific way" because of the method that was used to implement the claims on a computer. The dissent vigorously disagreed with that conclusion and found that the use of the computer in *CLS Bank* did not limit the claims in any meaningful way. 685 F.3d at 1357-61 (Prost, J.). The involvement of a computer is even more generalized and routine in this case. Nothing in the method at issue here resembled the "shadow records" step on which the majority in *CLS Bank* relied in finding a patentable application of an abstract idea. And here,

11

the panel itself recognized that the patent provides no software or programming whatsoever. *Ultramercial*, 657 F.3d at 1328-29.

In *Mayo*, the Supreme Court admonished that the addition of steps that involve "well-understood, routine, conventional activity" is just "'insignificant postsolution activity'" that does *not* convert an abstract idea into a patentable idea. 132 S. Ct. at 1294, 1300 (citation omitted). Instead, the claims must do "significantly more" in order to "provide practical assurance that the process is more than a drafting effort" aimed at monopolizing the unpatentable concept. *Id.* at 1297. Moreover, the Court emphasized that merely implementing an unpatentable idea "on a physical machine, namely a computer" is "not a patentable application of that principle." *Id.* at 1301 (reaffirming *Gottschalk v. Benson*, 409 U.S. 63 (1972)); *accord Parker v. Flook*, 437 U.S. 584, 590 (1978).

Likewise, the majority line of this Court's § 101 decisions (*CyberSource*, *Dealertrack*, *Fort Properties*, and *Bancorp*) recognizes that the mere addition of generalized computing devices is insufficient to make an abstract economic concept patentable. In those cases, the computing devices do not meaningfully limit the claims because the methods "'do[] not specify how the computer [components] ... are specially programmed to perform the steps claimed'"; they could "'be programmed to perform very different tasks in very different ways'"; and they, at most, used computers for their most general functions of performing

12

computations more efficiently. *Dealertrack*, 674 F.3d at 1333 (citation omitted); *see also Fort Props.*, 671 F.3d at 1323-24; *CyberSource*, 654 F.3d at 1373-76; *Bancorp*, 2012 WL 3037176, at *10. That conclusion follows *a fortiori* here.

Third, the *CLS Bank* majority and the vacated decision in this case suggested that the machine-or-transformation test is of little use outside "the Industrial Age." *See CLS Bank*, 685 F.3d at 1350-51, 1355; *Ultramercial*, 657 F.3d at 1327. But the Supreme Court and this Court have repeatedly reiterated the utility of the test even to Information Age processes. *See Mayo*, 132 S. Ct. at 1303; *Bilski*, 130 S. Ct. at 3226; *Bancorp*, 2012 WL 3037176, at *10.

## B.    The Question Presented Is Exceptionally Important

The question presented is undeniably important—as underscored by the amicus briefs filed in this case in the Supreme Court by leaders in high technology and organizations committed to open networks and markets. As amici explained, resolving "the confusion in the Federal Circuit ... is vital to fostering online innovation." Google & Verizon Br. 2-3. Indeed, "[t]hat legal uncertainty is itself bad for innovators because it creates business uncertainty that deters investment." *Id.* at 3; *see* Electronic Frontier Foundation Br. 4-11. Similarly, this Court and commentators have recognized that this "great uncertainty" "'does substantial harm to the effective operation of the patent system.'" *CLS Bank*, 685 F.3d at 1348-49 (quoting Donald S. Chisum, *Weeds and Seeds in the Supreme Court's*

13

*Business Method Patents Decision: New Directions for Regulating Patent Scope*, 15 Lewis & Clark L. Rev. 11, 14 (2011)). The nation's specialized court on patent law should eliminate that uncertainty.

The issue also is recurring with enormous frequency. In addition to the cases discussed, there have been numerous decisions since *Bilski* and *Mayo* struggling with the application of § 101 to computer-based inventions. *See, e.g.*, *CyberFone Sys., LLC v. Cellco P'ship*, --- F. Supp. 2d ----, 2012 WL 3528115, at *5-8 (D. Del. Aug. 16, 2012). Action is obviously needed by the full Court on this issue, and there is no reason to wait any longer before providing the needed guidance on the scope of § 101 in this critical context.[3]

## II.   THIS CASE PROVIDES AN IDEAL VEHICLE FOR *EN BANC* HEARING ON THE SCOPE OF § 101 IN THIS CONTEXT

As amici have explained, *Ultramercial* presents an "unusually good vehicle" in which to address the scope of § 101 for computer-related claims given the stark

---

[3] *See also, e.g.*, *Advanced Software Design Corp. v. Fiserv, Inc.*, 2012 WL 1684495, at *4-7 (E.D. Mo. May 15, 2012); *SmartGene, Inc. v. Advanced Biological Labs., SA*, --- F. Supp. 2d ----, 2012 WL 1059611, at *9-12 (D.D.C. Mar. 30, 2012); *Digitech Info. Sys., Inc. v. BMW Fin. Servs. NA*, --- F. Supp. 2d ----, 2012 WL 1081084, at *4-7 (M.D. Fla. Mar. 30, 2012); *Nazomi Commc'ns, Inc. v. Samsung Telecomms., Inc.*, 2012 WL 967968, at *4 (N.D. Cal. Mar. 21, 2012); *Prompt Med. Sys., L.P. v. Allscriptsmysis Healthcare Solutions, Inc.*, 2012 WL 678216, at *8-9 (E.D. Tex. Feb. 13, 2012); *Island Intellectual Prop. LLC v. Deutsche Bank AG*, 2012 WL 386282, at *2-9 (S.D.N.Y. Feb. 6, 2012); *Glory Licensing LLC v. Toys "R" Us, Inc.*, 2011 WL 1870591, at *1 (D.N.J. May 16, 2011); *Whitserve v. Computer Packages*, 2012 U.S. App. LEXIS 17510, at *70-76 (Fed. Cir. Aug. 7, 2012) (Mayer, J., dissenting).

manner in which that issue is presented by the "broadly claimed method" at issue (657 F.3d at 1329). Google & Verizon Br. 13. This Court already has recognized that the concept underlying the '545 patent is abstract, and that the patent does not specify any programming. 657 F.3d at 1328-29. The only question is whether the fact that the patent calls for implementing that abstract concept over a computer—and on "an Internet website"—is sufficient to satisfy § 101. *Supra* at 6-7.

The Court might also benefit from hearing this case *en banc* with *CLS Bank*. Hearing both cases would provide a more fulsome factual context in which to address the application of § 101. For example, in *CLS Bank*, this Court placed great weight on the claims' use of "shadow records" in finding that the patentee was using computers in a sufficiently particular way to overcome § 101. 685 F.3d at 1354. The majority also recited the specification's discussion of certain other features, such as "a system called 'INVENTICO'" and a "CONTRACT APP." *Id.* By contrast, the patent in *Ultramercial* does not specify even such minimal programming or computer details. Instead, it simply provides that the concededly abstract idea be performed "over the Internet." A481; *see supra* at 1, 6-7.

Either way, however, *en banc* consideration is urgently needed.

## CONCLUSION

For the foregoing reasons, the petition should be granted.

Respectfully submitted,

Richard G. Frenkel
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gregory G. Garre
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2200

*Counsel for Defendant-Appellee
WildTangent, Inc.*

Dated August 27, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2012, I caused 2 copies of the foregoing

document to be served via First Class Mail, postage prepaid, upon the following:

Lawrence M. Hadley
McKool Smith Hennigan, P.C.
865 South Figueroa Street
Suite 2900
Los Angeles, CA  90017


Gregory G. Garre
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2200

# ADDENDUM

Westlaw.

657 F.3d 1323, 100 U.S.P.Q.2d 1140
**(Cite as: 657 F.3d 1323)**

United States Court of Appeals,
Federal Circuit.
ULTRAMERCIAL, LLC and Ultramercial, Inc.,
Plaintiffs–Appellants,
v.
HULU, LLC, Defendant,
and
WildTangent, Inc., Defendant–Appellee.

No. 2010–1544.
Sept. 15, 2011.
Rehearing En Banc Denied Nov. 18, 2011.

**Background:** Patentees brought action alleging infringement of their patent for method for monetizing and distributing copyrighted products over internet. the United States District Court for the Central District of California, R. Gary Klausner, J., 2010 WL 3360098, dismissed complaint, and patentees appealed.

**Holding:** The Court of Appeals, Rader, Chief Judge, held that claimed invention was not so manifestly abstract as to render it ineligible for patent protection.

Reversed and remanded.

West Headnotes

**[1] Patents 291 ☞5**

291 Patents
   291I Subjects of Patents
      291k4 Arts
         291k5 k. In general. Most Cited Cases

Abstractness, as disqualifying characteristic for patentability, should exhibit itself so manifestly as to override broad statutory categories of eligible subject matter and statutory context that directs primary attention on patentability criteria of rest of Patent Act. 35 U.S.C.A. § 101.

**[2] Patents 291 ☞6**

291 Patents
   291I Subjects of Patents
      291k4 Arts
         291k6 k. Principles or laws of nature. Most Cited Cases

Although abstract principles are not eligible for patent protection, application of abstract idea may be deserving of patent protection. 35 U.S.C.A. § 101.

**[3] Patents 291 ☞5**

291 Patents
   291I Subjects of Patents
      291k4 Arts
         291k5 k. In general. Most Cited Cases

Inventions with specific applications or improvements to technologies in marketplace are not likely to be so abstract that they override Patent Act's language and framework. 35 U.S.C.A. § 101.

**[4] Patents 291 ☞7.14**

291 Patents
   291I Subjects of Patents
      291k4 Arts
         291k7.14 k. Particular processes or methods as constituting invention. Most Cited Cases

Idea for method of monetizing and distributing copyrighted products over internet was not so manifestly abstract as to render it ineligible for patent protection, even though claimed invention did not specify particular mechanism for delivering media content to consumer, where invention sought to remedy problems with prior art banner advertising by introducing particular method of product distribution, and disclosed practical application of idea that was likely to require intricate and complex computer programming and specific application to internet and cyber-market environment. 35 U.S.C.A. § 101.

**[5] Patents 291 ☞99**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

657 F.3d 1323, 100 U.S.P.Q.2d 1140
**(Cite as: 657 F.3d 1323)**

291 Patents
    291IV Applications and Proceedings Thereon
        291k99 k. Description of invention in specification. Most Cited Cases

Written description and enablement are conditions for patentability that are wholly apart from whether invention falls into category of statutory subject matter. 35 U.S.C.A. § 101.

**[6] Patents 291 ☜5**

291 Patents
    291I Subjects of Patents
        291k4 Arts
            291k5 k. In general. Most Cited Cases

**Patents 291 ☜99**

291 Patents
    291IV Applications and Proceedings Thereon
        291k99 k. Description of invention in specification. Most Cited Cases

**Patents 291 ☜101(6)**

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(6) k. Ambiguity, uncertainty or indefiniteness. Most Cited Cases

Statutory eligibility filter should not be used to invalidate patents based on concerns about vagueness, indefinite disclosure, or lack of enablement. 35 U.S.C.A. § 101.

**Patents 291 ☜328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original utility. Most Cited Cases

    7,346,545. Cited.

***1324** Lawrence M. Hadley, Hennigan Dorman, LLP,

of Los Angeles, CA, argued for plaintiffs-appellants. With him on the brief were Hazim Ansari and Mieke K. Malmberg.

Gregory C. Garre, Latham & Watkins, LLP, of Washington, DC, argued for defendant-appellee. On the brief were Richard G. Frenkel and Lisa K. Nguyen, Menlo Park, CA. Of counsel was Richard P. Bess.

Before RADER, Chief Judge, LOURIE and O'MALLEY, Circuit Judges.

RADER, Chief Judge.

The United States District Court for the Central District of California dismissed Ultramercial, LLC and Ultramercial, Inc.'s (collectively, "Ultramercial") patent infringement claims, finding that U.S. Patent No. 7,346,545 ("the '545 patent") does not claim patent-eligible subject matter. Because the '545 patent claims a "process" within the language and meaning of 35 U.S.C. § 101, this court reverses and remands.

                I

The '545 patent claims a method for distributing copyrighted products (e.g., songs, movies, books) over the Internet where the consumer receives a copyrighted product for free in exchange for viewing an advertisement, and the advertiser pays for the copyrighted content. Claim 1 of the '545 patent reads:

    A method for distribution of products over the Internet via a facilitator, said method comprising the steps of:

    a first step of receiving, from a content provider, media products that are covered by intellectual property rights protection and are available for purchase, wherein each said media product being comprised of at least one of text data, music data, and video data;

    a second step of selecting a sponsor message to be associated with the media product, said sponsor message being selected from a plurality of sponsor messages, said second step including accessing an activity log to verify that the total number of times which the sponsor message has been previously presented is less than the number of transaction cycles contracted by the sponsor of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

657 F.3d 1323, 100 U.S.P.Q.2d 1140
**(Cite as: 657 F.3d 1323)**

the sponsor message;

a third step of providing the media product for
sale at an Internet website;

a fourth step of restricting general public access to
said media product;

a fifth step of offering to a consumer access to the
media product without charge to the consumer on
the precondition that the consumer views the
sponsor message;

a sixth step of receiving from the consumer a
request to view the sponsor message, wherein the
consumer submits said request in response to
**\*1325** being offered access to the media product;

a seventh step of, in response to receiving the
request from the consumer, facilitating the dis-
play of a sponsor message to the consumer;

an eighth step of, if the sponsor message is not an
interactive message, allowing said consumer ac-
cess to said media product after said step of fa-
cilitating the display of said sponsor message;

a ninth step of, if the sponsor message is an in-
teractive message, presenting at least one query to
the consumer and allowing said consumer access
to said media product after receiving a response to
said at least one query;

a tenth step of recording the transaction event to
the activity log, said tenth step including updating
the total number of times the sponsor message has
been presented; and

an eleventh step of receiving payment from the
sponsor of the sponsor message displayed.

'545 patent col.8 ll.5–48.

Ultramercial filed suit against Hulu, LLC ("Hu-
lu"), YouTube, LLC ("YouTube"), and WildTangent,
Inc. ("WildTangent"), alleging infringement of the
'545 patent. Hulu and YouTube have been dismissed
from the case. WildTangent filed a motion to dismiss
for failure to state a claim, arguing that the '545 patent
did not claim patent-eligible subject matter. The dis-

trict court granted WildTangent's motion to dismiss.
Ultramercial appeals. This court has jurisdiction under
28 U.S.C. § 1295(a)(1).

This court reviews a district court's dismissal for
failure to state a claim without deference. *Gillig v.
Nike, Inc.*, 602 F.3d 1354, 1358 (Fed.Cir.2010). This
court also reviews determinations regarding pa-
tent-eligible subject matter under 35 U.S.C. § 101
without deference. *In re Ferguson*, 558 F.3d 1359,
1363 (Fed.Cir.2009).

II

The district court dismissed Ultramercial's claims
for failure to claim statutory subject matter without
formally construing the claims. This court has never
set forth a bright line rule requiring district courts to
construe claims before determining subject matter
eligibility. Indeed, because eligibility is a "coarse"
gauge of the suitability of broad subject matter cate-
gories for patent protection, *Research Corp. Techs.,
Inc. v. Microsoft Corp.*, 627 F.3d 859, 869
(Fed.Cir.2010), claim construction may not always be
necessary for a § 101 analysis. *See, e.g., Bilski v.
Kappos*, ——U.S. ——, 130 S.Ct. 3218, 3231, 177
L.Ed.2d 792 (2010) (finding subject matter ineligible
for patent protection without claim construction). On
many occasions, however, a definition of the inven-
tion via claim construction can clarify the basic
character of the subject matter of the invention. Thus,
claim meaning may clarify the actual subject matter at
stake in the invention and can enlighten, or even an-
swer, questions about subject matter abstractness. In
this case, the subject matter at stake and its eligibility
does not require claim construction.

III

35 U.S.C. § 101 sets forth the categories of sub-
ject matter that are eligible for patent protection:
"[w]hoever invents or discovers any new and useful
*process, machine, manufacture, or composition of
matter,* or any new and useful improvement thereof,
may obtain a patent therefor, subject to the conditions
and requirements of this title" (emphasis added). In
*Bilski*, the Supreme Court explained that "[i]n choos-
ing such expansive terms modified by the compre-
hensive 'any,' Congress **\*1326** plainly contemplated
that the patent laws would be given wide scope." 130
S.Ct. at 3225 (quoting *Diamond v. Chakrabarty*, 447
U.S. 303, 308, 100 S.Ct. 2204, 65 L.Ed.2d 144
(1980)). After all, the purpose of the Patent Act is to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

657 F.3d 1323, 100 U.S.P.Q.2d 1140
**(Cite as: 657 F.3d 1323)**

encourage innovation, and the use of broadly inclusive categories of statutory subject matter ensures that "ingenuity ... receive[s] a liberal encouragement." *Chakrabarty,* 447 U.S. at 308, 100 S.Ct. 2204.

More importantly, as § 101 itself expresses, subject matter eligibility is merely a threshold check; claim patentability ultimately depends on "the conditions and requirements of this title," such as novelty, nonobviousness, and adequate disclosure. 35 U.S.C. § 101; *see Classen Immunotherapies, Inc. v. Biogen IDEC,* 659 F.3d 1057, 1064 (Fed.Cir.2011) (pointing out the difference between "the threshold inquiry of patent-eligibility, and the substantive conditions of patentability"). By directing attention to these substantive criteria for patentability, the language of § 101 makes clear that the categories of patent-eligible subject matter are no more than a "coarse eligibility filter." *Research Corp.,* 627 F.3d at 869. In other words, the expansive categories—process, machine, article of manufacture, and composition of matter—are certainly not substitutes for the substantive patentability requirements set forth in § 102, § 103, and § 112 and invoked expressly by § 101 itself. Moreover, title 35 does not list a single ineligible category, suggesting that any new, nonobvious, and fully disclosed technical advance is eligible for protection, subject to the following limited judicially created exceptions.

In line with the broadly permissive nature of § 101's subject matter eligibility principles, judicial case law has created only three categories of subject matter outside the eligibility bounds of § 101—laws of nature, physical phenomena, and abstract ideas. *Bilski,* 130 S.Ct. at 3225. Indeed, laws of nature and physical phenomena cannot be invented. Abstractness, however, has presented a different set of interpretive problems, particularly for the § 101 "process" category. Actually, the term "process" has a statutory definition that, again, admits of no express subject matter limitation: a title 35 "process" is a "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b). Indeed, the Supreme Court recently examined this definition and found that the ordinary, contemporary, common meaning of "method" may include even methods of doing business. *See Bilski,* 130 S.Ct. at 3228. Accordingly, the Court refused to deem business methods ineligible for patent protection and cautioned against "read[ing] into

the patent laws limitations and conditions which the legislature has not expressed." *Id.* at 3226 (quoting *Diamond v. Diehr,* 450 U.S. 175, 182, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981)). And this court detects no limitations or conditions on subject matter eligibility expressed in statutory language. *See, e.g., Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 653 F.3d 1329, 1348 (Fed.Cir.2011) (patent-ineligible categories of subject matter are "judicially created exceptions"); *Prometheus Labs., Inc. v. Mayo Collaborative Servs.,* 628 F.3d 1347, 1353 (Fed.Cir.2010), *cert. granted,* ―― U.S. ――, 130 S.Ct. 3543, 177 L.Ed.2d 1120 (2010) (patent-ineligible categories are "not compelled by the statutory text"); *see also Bilski,* 130 S.Ct. at 3225 (Supreme Court acknowledging that judge-created "exceptions are not required by the statutory text").

In an effort to grapple with the non-statutory "abstractness" limit, this court at one point set forth a machine-or-transformation test as the exclusive metric for **\*1327** determining the subject matter eligibility of processes. *In re Bilski,* 545 F.3d 943, 956 (Fed.Cir.2008), *aff'd on other grounds, Bilski,* 130 S.Ct. 3218. The Supreme Court rejected this approach in *Bilski,* noting that the machine-or-transformation test is simply "a useful and important clue, an investigative tool, for determining whether *some* claimed inventions are processes under § 101" and is not "the sole test for deciding whether an invention is a patent-eligible 'process.' " 130 S.Ct. at 3227 (emphasis added). While machine-or-transformation logic served well as a tool to evaluate the subject matter of Industrial Age processes, that test has far less application to the inventions of the Information Age. *See id.* at 3227–28 ("[I]n deciding whether previously unforeseen inventions qualify as patentable 'processes,' it may not make sense to require courts to confine themselves to asking the questions posed by the machine-or-transformation test. Section 101's terms suggest that new technologies may call for new inquiries."). Technology without anchors in physical structures and mechanical steps simply defy easy classification under the machine-or-transformation categories. As the Supreme Court suggests, mechanically applying that physical test "risk[s] obscuring the larger object of securing patents for valuable inventions without transgressing the public domain." *Id.* at 3228.

[1] Both members of the Supreme Court and this

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

657 F.3d 1323, 100 U.S.P.Q.2d 1140
**(Cite as: 657 F.3d 1323)**

court have recognized the difficulty of providing a precise formula or definition for the judge-made ineligible category of abstractness. *See id.* at 3236 (Stevens, J., concurring) ("The Court ... [has] never provide[d] a satisfying account of what constitutes an unpatentable abstract idea."); *Research Corp., 627 F.3d at 868.* Because technology is ever-changing and evolves in unforeseeable ways, this court gives substantial weight to the statutory reluctance to list any new, non-obvious, and fully disclosed subject matter as beyond the reach of title 35. In sum, § 101 is a "dynamic provision designed to encompass new and unforeseen inventions." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.,* 534 U.S. 124, 135, 122 S.Ct. 593, 151 L.Ed.2d 508 (2001). With this in mind, this court does "not presume to define 'abstract' beyond the recognition that this disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." *Research Corp., 627 F.3d at 868.*

[2] Although abstract principles are not eligible for patent protection, an application of an abstract idea may well be deserving of patent protection. *See Diehr,* 450 U.S. at 187, 101 S.Ct. 1048 ("an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection"); *Parker v. Flook,* 437 U.S. 584, 591, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978) ("While a scientific truth, or the mathematical expression of it, is not a patentable invention, a novel and useful structure created with the aid of knowledge of scientific truth may be."). The application of an abstract idea to a "new and useful end" is the type of invention that the Supreme Court has described as deserving of patent protection. *Gottschalk v. Benson,* 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972). After all, unlike the Copyright Act which divides idea from expression, the Patent Act covers and protects any new and useful technical advance, including applied ideas.

Turning to the '545 patent, the claimed invention is a method for monetizing and distributing copyrighted products over the Internet. As a method, it satisfies § 100's definition of "process" and thus falls within a § 101 category of patent-eligible subject **\*1328** matter. Thus, this court focuses its inquiry on the abstractness of the subject matter claimed by the '545 patent.

[3] "[I]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Research Corp.,* 627 F.3d at 869. The '545 patent seeks to remedy problems with prior art banner advertising, such as declining clickthrough rates, by introducing a method of product distribution that forces consumers to view and possibly even interact with advertisements before permitting access to the desired media product. '545 patent col.2 ll.14–18. By its terms, the claimed invention purports to improve existing technology in the marketplace. By its terms, the claimed invention invokes computers and applications of computer technology. Of course, the patentability of the '545 patent, though acknowledged by the U.S. Patent Office, would still need to withstand challenges that the claimed invention does not advance technology (novelty), does not advance technology sufficiently to warrant patent protection (obviousness), or does not sufficiently enable, describe, and disclose the limits of the invention (adequate disclosure).

[4] Returning to the subject matter of the '545 patent, the mere idea that advertising can be used as a form of currency is abstract, just as the vague, unapplied concept of hedging proved patent-ineligible in *Bilski.* However, the '545 patent does not simply claim the age-old idea that advertising can serve as currency. Instead the '545 patent discloses a practical application of this idea. The '545 patent claims a particular method for monetizing copyrighted products, consisting of the following steps: (1) receiving media products from a copyright holder, (2) selecting an advertisement to be associated with each media product, (3) providing said media products for sale on an Internet website, (4) restricting general public access to the media products, (5) offering free access to said media products on the condition that the consumer view the advertising, (6) receiving a request from a consumer to view the advertising, (7) facilitating the display of advertising and any required interaction with the advertising, (8) allowing the consumer access to the associated media product after such display and interaction, if any, (9) recording this transaction in an activity log, and (10) receiving payment from the advertiser. '545 patent col.8 ll.5–48. Many of these steps are likely to require intricate and complex computer programming. In addition, certain of these steps clearly require specific

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

657 F.3d 1323, 100 U.S.P.Q.2d 1140
**(Cite as: 657 F.3d 1323)**

application to the Internet and a cyber-market environment. One clear example is the third step, "providing said media products for sale on an Internet website." *Id.* col.8 ll.20–21. And, of course, if the products are offered for sale on the Internet, they must be "restricted"—step four—by complex computer programming as well. Viewing the subject matter as a whole, the invention involves an extensive computer interface. This court does not define the level of programming complexity required before a computer-implemented method can be patent-eligible. Nor does this court hold that use of an Internet website to practice such a method is either necessary or sufficient in every case to satisfy § 101. This court simply find the claims here to be patent-eligible, in part because of these factors.

In this context, this court examines as well the contention that the software programming necessary to facilitate the invention deserves no patent protection or amounts to abstract subject matter or, in the confusing terminology of machines and physical transformations, fails to satisfy the "particular machine" requirement. This court confronted that contention *1329 nearly two decades ago in the en banc case of *In re Alappat*, 33 F.3d 1526 (Fed.Cir.1994). At that time, this court observed that "programming creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *Id.* at 1545. As computer scientists understand:

the inventor can describe the invention in terms of a dedicated circuit or a process that emulates that circuit. Indeed, the line of demarcation between a dedicated circuit and a computer algorithm accomplishing the identical task is frequently blurred and is becoming increasingly so as the technology develops. In this field, a software process is often interchangeable with a hardware circuit.

*Id.* at 1583 (J. Rader, concurring). In other words, a programmed computer contains circuitry unique to that computer. That "new machine" could be claimed in terms of a complex array of hardware circuits, or more efficiently, in terms of the programming that facilitates a unique function. The digital computer may be considered by some the greatest invention of the twentieth century, and both this court and the Patent Office have long acknowledged that "im-

provements thereof" through interchangeable software or hardware enhancements deserve patent protection. Far from abstract, advances in computer technology—both hardware and software—drive innovation in every area of scientific and technical endeavor.

[5][6] This court understands that the broadly claimed method in the ' 545 patent does not specify a particular mechanism for delivering media content to the consumer (i.e., FTP downloads, email, or real-time streaming). This breadth and lack of specificity does not render the claimed subject matter impermissibly abstract. Assuming the patent provides sufficient disclosure to enable a person of ordinary skill in the art to practice the invention and to satisfy the written description requirement, the disclosure need not detail the particular instrumentalities for each step in the process.

That a process may be patentable, irrespective of the particular form of the instrumentalities used, cannot be disputed. If one of the steps of a process be that a certain substance is to be reduced to a powder, it may not be at all material what instrument or machinery is used to effect that object, whether a hammer, a pestle and mortar, or a mill.

*Benson*, 409 U.S. at 69–70, 93 S.Ct. 253 (quoting *Cochrane v. Deener*, 94 U.S. 780, 787–88, 24 L.Ed. 139 (1876)). Moreover, written description and enablement are conditions for patentability that title 35 sets "wholly apart from whether the invention falls into a category of statutory subject matter." *Diehr*, 450 U.S. at 190, 101 S.Ct. 1048 (quoting *In re Bergy*, 596 F.2d 952, 961 (C.C.P.A.1979)). The "coarse eligibility filter" of § 101 should not be used to invalidate patents based on concerns about vagueness, indefinite disclosure, or lack of enablement, as these infirmities are expressly addressed by § 112. *See* 35 U.S.C. § 112; *see also Research Corp.*, 627 F.3d at 869 ("In section 112, the Patent Act provides powerful tools to weed out claims that may present a vague or indefinite disclosure of the invention.").

Finally, the '545 patent does not claim a mathematical algorithm, a series of purely mental steps, or any similarly abstract concept. It claims a particular method for collecting revenue from the distribution of media products over the Internet. In a recent case, this court discerned that an invention claimed an "un-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

657 F.3d 1323, 100 U.S.P.Q.2d 1140
**(Cite as: 657 F.3d 1323)**

patentable mental process." *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1370 (Fed.Cir.2011). The eligibility exclusion for *purely* *1330 mental steps is particularly narrow. *See Prometheus Labs.,* 628 F.3d at 1358 (noting that claims must be considered as a whole and that "the presence of mental steps [in a claim] does not detract from the patentability of [other] steps"). Unlike the claims in *CyberSource,* the claims here require, among other things, controlled interaction with a consumer via an Internet website, something far removed from *purely* mental steps.

In sum, as a practical application of the general concept of advertising as currency and an improvement to prior art technology, the claimed invention is not "so manifestly abstract as to override the statutory language of section 101." *Research Corp.,* 627 F.3d at 869. Accordingly, this court reverses the district court's dismissal of Ultramercial's patent claims for lack of subject matter eligibility and remands for further proceedings. This decision does not opine at all on the patentability of the claimed invention under the substantive criteria set forth in § 102, § 103, and § 112.

**REVERSED AND REMANDED**

C.A.Fed. (Cal.),2011.
Ultramercial, LLC v. Hulu, LLC
657 F.3d 1323, 100 U.S.P.Q.2d 1140

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.